(April 4, 1907.)

## CHRISTOPHER B. TAYLOR, Appellant, v. REINHARD REISING et al., Respondents.

[89 Pac. 943.]

BOUNDARY LINE—ESTABLISHMENT OF—ACQUIESCENCE IN—TRUE LINE— NEGLIGENCE.

1. Where a township of land has been segregated under the Carey act, and a water company has contracted to furnish water to reclaim such tract, and the government corners and boundary monuments have become obliterated, and such water company procures a private surveyor to establish the lines of the various legal subdivisions of said township, and he establishes them, and such land is thereafter taken and entered by divers persons in accordance with such private survey, and fences, ditches, buildings and other improvements are located upon the various subdivisions purchased by them in accordance with such survey, in conflict between adjoining land owners, it will be presumed that such private survey conforms to the government survey, and that such private survey correctly marks the boundaries of such lands.

2. Where R. entered a certain tract in said township, the boundaries thereof as represented by said private survey having been pointed out to him by said water company, and he having entered his land believing that such lines were the correct boundary lines, and thereafter T. enters an adjoining tract and the boundaries are pointed out to him as represented by such private survey, and he enters the tract, believing that such boundaries are correct, and erects improvements thereon, and R. assists him in building a line fence on the dividing line between said tracts, held, that the line so established by said private survey and marked on the ground is

the true division line, and correctly marks the dividing line between their lands.

3. The parties having purchased their lands under the guidance, direction, and assistance of the agents of the land and water company, each having full knowledge that the lines by which they purchased had been established by private survey, are bound by such lines.

(Syllabus by the court.)

APPEAL from the District Court of Fourth Judicial District for Cassia County. Hon. Lyttleton Price, Judge.

Action to determine the boundaries and quiet the title to certain real estate. Demurrer to complaint sustained, judgment of dismissal entered. *Reversed.*

Sweeley & Sweeley, for Appellant.

Where a person sells or purchases according to the boundaries specifically pointed out, marked on the ground, he is estopped subsequently to claim other boundaries to the injury of others.     (5 Cyc. 937; *Louks v. Kinniston,* 50 Vt. 166; *Thompson v. Borg,* 90 Minn. 209, 95 N. W. 896; *Bolton v. Eggleston,* 61 Iowa, 163, 16 N. W. 62; *Briscoe v. Puckett* (Tex.), 12 S. W. 978; *Anderson v. Jackson* (Tex.), 13 S. W. 30; *New York & T. Land Co. v. Gardner* (Tex.), 25 S. W. 737; *Parrish v. Williams* (Tex. Civ. App), 79 S. W. 1097; *Spiller v. Scribner,* 36 Vt. 245; *Hefner v. Downing,* 57 Tex. 576; *McGee v. Stone,* 9 Cal. 600.)

"A proprietor who points out to a settler on land adjoining his own a line as the true boundary line, acquiescing and assisting him in a settlement and improvement thereon, is thereby estopped from afterward asserting claim to the land covered by the improvements, though a subsequent survey proved it to be his own land." (Tyler's Law of Boundaries (1874), p. 333, citing *Jordan v. Deaton,* 23 Ark. 704; Herman on Estoppel, sec. 508.)

"A man will not be permitted to recover land which he has encouraged another to occupy and improve, even when the encouragement was given under the influence of a mistake

and in ignorance of his own better right." (Herman on Estoppel, 1871 ed., sec. 419.)

Where there is doubt or ignorance as to the true locality of the line, a parol agreement fixing the line between adjoining owners is not within the statute of frauds, and, where satisfactorily established, will be enforced by the courts notwithstanding it may afterward be demonstrated that the agreed line was erroneously fixed. (*Galbraith v. Lunsford,* 87 Tenn. 89, 9 S. W. 365, 1 L. R. A. 522; *Rowell* v. *Weinemann,* 119 Iowa, 256, 97 Am. St. Rep. 310, 93 N. W. 279.)

C. M. Price and John E. Davies, for Respondents.

The citations from Herman on Estoppel and Tyler's Law of Boundaries cited by the appellant in his brief state the correct principles when the facts are forthcoming to fit them. But the facts are not stated in the complaint in this action which warrant enforcing those rules. The principles thus laid down apply only when the party making the representations alone is mistaken, and the party to whom they are made believes in good faith that such representations are true and so acts upon such representations.

It is well settled that the lines actually run by original government surveyors become the true boundaries, and, if they can be ascertained through monuments erected by these officials, they will control. (*Ufford v. Wilkins,* 33 Iowa, 112; *Sayers v. City of Lyons,* 10 Iowa, 249; *Root v. Town of Cincinnati,* 87 Iowa, 204, 54 N. W. 206.)

"A land owner who, in good faith, points to the owner of adjoining land an incorrect division line, both parties being ignorant of the true line, is not estopped to deny that such line is the true boundary." (*Cheeney v. Nebraska & C. Stone Co.,* 41 Fed. 740; *Titus v. Morse,* 40 Me. 348, 63 Am. Dec. 665; *Francois v. Maloney,* 56 Ill. 399; *Heinz v. Cramer,* 84 Iowa, 497, 51 N. W. 173; *De Long v. Baldwin,* 111 Mich. 466, 69 N. W. 831; *Coombs v. Cooper,* 5 Minn. 254 (Gil. 200); *Evans v. Miller,* 58 Miss. 120, 38 Am. Rep. 313; *Stuart v. Luddington,* 1 Rand. (Va.) 403, 10 Am. Dec. 550; *Win-*

*nipisiogee Paper Co. v. New Hampshire Land Co.*, 59 Fed. 542.)

The appellant in this case asks that the court establish the government line between lots 1 and 2, 226 feet south from the place where the government survey establishes the same. He does not ask that he be permitted to maintain title to all of lot 1 and a strip off from the north part of lot 2, 226 feet wide, but he asks that he be given title to lot 1 and that said lot 1 shall include said strip of 226 feet. (*Rowell v. Weinemann*, 119 Iowa, 256, 97 Am. St. Rep. 310, 93 N. W. 279; *Ufford v. Wilkins*, 33 Iowa. 112; *Sayers v. City of Lyons*, 10 Iowa, 249; *Root v. Town of Cincinnati*, 87 Iowa, 204, 54 N. W. 206; *Rollins v. Davidson*, 84 Iowa, 237, 50 N. W. 1061.)

The contention of the appellant cannot be maintained, and the ruling of the court below must be sustained because it is uncertain what piece or parcel of land the appellant is seeking to quiet title in himself and against respondent Reising.

SULLIVAN, J.—This is a suit brought to determine the boundaries and quiet title to lot 1, section 7, township 10 south of range 17 east, B. M., situated in Cassia county.

A demurrer was interposed to the amended and substituted complaint, to which we shall hereafter refer as the complaint, on the ground that it does not state facts sufficient to constitute a cause of action, which demurrer was sustained by the court, and the plaintiff having elected to stand on his complaint, judgment was entered dismissing his action, from which judgment this appeal is taken.

The complaint is quite voluminous, and we shall state at some length its allegations.

It is first alleged that under and by virtue of an act of Congress, commonly known as the Carey act, and pursuant to an agreement between the United States and the state of Idaho, a large tract of vacant public land, desert in character, situated in Cassia county, was selected by the state and segregated from the public domain for the purpose of having the same reclaimed under a system of irrigation; that for

that purpose the state entered into a contract with the defendant, the Twin Falls Land and Water Company, a corporation, whereby said corporation agreed to construct a system of irrigation, consisting of a dam on Snake river and certain ditches into which the waters of Snake river were to be diverted for the irrigation of said land; that said corporation was given and had the right and power to enter into contracts with persons who entered and purchased said lands for furnishing them with water and selling to them shares of stock in said corporation, all of which entrymen and purchasers being required by law to contract for water rights and to purchase one share of stock in said corporation for every acre of land so entered; that before said lands were entered or selected by entrymen, and before a sale of any water rights or shares of stock to such entrymen, it was discovered that certain corners of the government survey of the lands located and situated in said township 10 had become obliterated and could not be found, and for the purpose of enabling said corporation and prospective entrymen and settlers to determine the location of the corners and lines of the several subdivisions of the land, a survey of all the lands in said township was made by one Hayes for said land and water company, which survey was intended to relocate and re-establish the government corners of said several subdivisions, and that said survey is known and designated as the land and water company survey; that in making said survey said surveyor marked with visible and easily distinguishable stakes and monuments the corners of the several subdivisions of lands in said township, by which intending entrymen could readily ascertain and determine the boundaries of said lands; that said land and water company, assuming and believing that said survey was correct, and that it accurately showed the true corners and located the true lines of said lands, assisted the entrymen and purchasers of such lands in selecting and locating such lands as the entrymen might desire to locate and enter, and for which such purchasers might wish to purchase water rights, and pointed out to all such entrymen and settlers, including the plaintiff

and defendant Reising, before selections and locations and entries were made by them, the corners and lines of said lands as the same were located and fixed by said private survey, and informed them that the boundaries of said lands were as shown by said survey; that all of the persons who selected lands in said township and who made entry thereof and who entered into contracts for water rights and shares of stock in relation thereto, assumed and believed that said survey was correct, and, acting on such assumption and belief, selected the lands they wished to purchase, made their entries therefor and entered into such water contracts after having seen and inspected said lands and the boundaries thereof as shown by said survey; that under the assumption and belief that the boundaries of said lands were in fact as shown by said survey, a large number of persons who made entries of said lands, and their grantees, have settled thereon, cleared the same of sage-brush, constructed irrigating ditches, put up their fences and built houses and other improvements with reference to and along the lines of said survey, and without information or knowledge that the same did not, as is now claimed, correspond with the government survey of said lands, and no claim was ever made by any of the parties who entered any of the land in said township, their assigns or grantees, until after all of said lands were thus entered, located and selected, and until after said entrymen made contracts for water rights and shares of stock and paid in part therefor, that there were any differences or discrepancies between said survey and the government survey of said lands; that in the month of November, 1904, the defendant Reising, under the conditions and in the manner aforesaid, selected and made entry of a portion of said lands described as lot 2 in section 7 of said township, and selected and entered said lot as the same was shown, located and bounded by said private survey, and in the belief and understanding on his part that the corners and lines of said lot were as shown by said private survey; that he entered into a contract for water rights and shares of stock with reference thereto, and supposed and believed at said time that said

shares and water right related to said lot 2 as the same was shown and bounded by said private survey, and did all of such matters in the belief on his part that said private survey correctly fixed and showed the true boundaries of said lot; that thereafter, in the month of February, 1905, under the conditions and in the manner aforesaid, the plaintiff selected from said public lands as the tract he wished to enter and for which he wished to purchase water rights and shares of stock, the tract described as lot 1 of said section 7, which lies immediately north of and contiguous to said lot 2, and that pursuant to said selection the plaintiff entered said lot 1, paid part of the purchase price and entered into a contract for water rights and shares of stock with reference thereto, and that in doing so, he acted in the belief that the boundaries of said lot 1 were as shown by the corners and lines located and fixed by said private survey; that many of the cornerstones, mounds, pits and other monuments of the government survey of said lands in said township, including the tracts entered by plaintiff and defendant Reising were obliterated and could not be found at the time said parties made their selections and entries; that at and before the time of making said selection and entry, the plaintiff could not readily and without great inconvenience and expense ascertain where the lines of said lots 1 and 2 existed according to the government survey, and could not ascertain same without having a new survey made of said township and a relocation made of said government corners, and could not without such new survey determine just where the lines and boundaries of said lots 1 and 2 existed according to the government survey, if, in fact, they were different from said private survey, and that to have such survey and relocation made would have caused plaintiff much inconvenience, expense and loss of time, but that knowing where the lines of said lots were according to said private survey, which he believed to be correct, and in the belief and with the understanding that said private survey was correct and accurately showed the true lines and corners of said lots, he made said selection and entry, and purchased said shares of stock and

made payment in part therefor, and made his improvements on said land as herein stated; that before and at the time of the making of plaintiff's selection of said lot 1, and his entering the same and making the contract for water rights and the purchase of shares of stock, the plaintiff was informed of the entry so made by the defendant Reising of the said lot 2 and of the place where it was claimed by said Reising the boundary line existed between said lots 1 and 2, which was where the same was located by said private survey, and with such information and knowledge and assuming and believing that said boundary line existed in fact at the place shown by said private survey and as claimed by said defendant Reising, the plaintiff selected and entered said lot 1 and entered into said contract for a water right therefor and made payment thereon; that after plaintiff had entered said lot 1, he settled thereon for the purpose of improving the same and making it his home, and with the knowledge of the defendant Reising and without any notice, knowledge or information, and without any notice or claim on the part of said defendant that said private survey did not properly locate the boundary line between said lots 1 and 2, the plaintiff permanently improved said property by erecting a fence on what he supposed was a true division line between said two lots, and which was in fact the line so fixed by said private survey, and built his dwelling-house and other improvements near said line, and ever since said time he has occupied the same as the place of residence for himself and family, and has used and occupied all of said lot 1 up to said division line; that with the knowledge that the plaintiff claimed and was acting in the belief that the boundary line between said lots was as fixed by said private survey, and that the plaintiff claimed to own all of lot 1 up to said line and that plaintiff's property extended thereto, the defendant Raising assisted the plaintiff in constructing said fence and other improvements where they are now located; that it is now claimed by persons owning or interested in different tracts of land located in said township that there are discrepancies between the government survey and said private survey, and it is

claimed that there are errors in said government survey, and by reason of said claims there exists a confusion of boundaries, and that if in fact said claims are shown to be correct, and if in fact the boundaries of said several divisions of the lands embraced in said township are as claimed to be by said government survey, and if the persons who entered the lands in said township as aforesaid, their assigns and grantees, are compelled to accept such government survey as the bound-.aries of their lands and lines as established by said survey as now claimed, then none of said entrymen, their assigns and grantees, will receive and hold the exact lands they inspected, and which they intended to enter and for which they supposed they were making contracts, and on which they intended the payments so made by them to apply, and a great number of them will be most seriously damaged and inconvenienced by being compelled to remove and change the location of their improvements and by losing labor expended thereon, while if the lines of said subdivisions are as fixed by said private survey, and if said entrymen, their assigns and grantees, can hold their lands according to said last-named survey, then all of said persons will receive and have the identical lands they selected and for which they supposed they were making payment, and for which they intended to enter into contracts for water rights and shares of stock; that as against the defendant Reising, the plaintiff is the absolute and unqualified owner in fee simple of all of said lot 1, including that portion thereof which consists of a strip two hundred and twenty-six feet in width, north and south, extending entirely across lot 1, and lying contiguous to and immediately north of the division line between said lot 1 and said lot 2, as the same was and is located and fixed by the said land and water company survey, and which is more particularly described as follows: Beginning at a point one thousand and ninety-four feet south of the southeast corner of section 1, in township 10 south, of range 16 east of the Boise meridian, as said corner is located and fixed by the government survey of section 1, running thence east to the east line of said lot 1, in section 7, in township 10

south, of range 17 east of the Boise meridian, running thence
east to the east line of said lot 1, thence south two hundred
and twenty-six feet, thence west to a point two hundred
and twenty-six feet south of the point of beginning, thence
north to the place of beginning; and that the plaintiff owns
and holds the same free and clear of any and all lawful
claims of the said defendant; that the defendant Reising is
now claiming and was claiming at the time of the commence-
ment of this action, that the true boundary between said
lots 1 and 2 is two hundred and twenty-six feet north
of the line so located and established by the said land and
water company survey, and is claiming title adverse to
the estate of the plaintiff to that portion of said lot 1
which consists of said strip of land two hundred and twenty-
six feet wide, north and south, extending entirely across
the south end of lot 1, and lying contiguous to and im-
mediately north of the division line between said lots 1 and
2 as the same was located and fixed by the survey last
above mentioned; the same being the strip or parcel of land
particularly described in paragraph numbered 14 of plain-
tiff's complaint; but plaintiff alleges that said defendant
is not now, and was not at the time of the commencement
of this action, the owner of any portion of said lot 1 lying
north of said division line so fixed and established, and has
no interest therein or right or title thereto; that all of the
persons who made entries for said lands in said township,
because of their having selected and entered the same de-
pending upon the lines and boundaries as fixed by said private
survey, and because of the matters and things therein set
forth, are each and all estopped from claiming as against
one another that the lines of their said lands are not as fixed
by said survey, but that they exist elsewhere, and that all of
said persons, their grantees and assigns, are estopped by
reason of said facts, from claiming title by reason of any
inaccuracies or errors in said private survey or any dis-
crepancies between said survey and the government survey,
to any land extending beyond or outside of the boundaries of
their lands as fixed by said private survey, and that by reason

of the matters and things herein set forth, the defendant Reising is now estopped from claiming that the line between his land and that of the plaintiff is other or different from the line so accepted by the parties to this suit as above stated and as fixed by said land and water company survey; and that said defendant Reising is estopped from having or claiming as against the plaintiff any right or title to or interest or estate in any portion of said lot 1 lying north of said division line as the same was and is so fixed and established.

The foregoing contains substantially all of the allegations of the complaint, and no doubt contains much matter that it was not absolutely necessary to plead, but contains a statement of the facts and conditions existing as to said township of land, and the one question presented is whether, under the facts alleged, the respondent Reising is estopped from claiming title to said strip of land two hundred and twenty-six feet wide along the north side of said lot 2, and whether the plaintiff is entitled to have the title to said strip quieted in himself.

It is contended by counsel for appellant that the defendant is estopped from claiming that the line of division between said two lots is other than where they both supposed it to be when they selected their lands and made their purchases, whether that line is where the same was located by the government survey or not, and regardless of whether it is where it was located by the government survey; that the rights of plaintiff and defendant as to the dividing line between them does not depend upon the government survey; and counsel insist that the rule of law which must determine the equities between the parties to this suit is that where two persons purchase adjoining lands with reference to a division line which is accepted by them at the time of purchase, neither can thereafter question the correctness of that line, even though, as a matter of fact, a mistake has been made in locating it.

The allegations of the complaint show that the government monuments had been obliterated and could not be found, and

that before these parties made selections of their lands and before they purchased, said township had been surveyed by a competent surveyor and visible monuments set at the corners of the legal subdivisions thereof, and that the parties hereto selected their lands according to the lines thus established; that the defendant made his selection first and knew at the time appellant was making his selection that the latter was depending upon the line so fixed by said survey, and also knew that appellant made valuable and lasting improvements on his side of said division line with the full knowledge of the defendant, and defendant is now claiming that the true boundary line between these parties is at a place other than at the one accepted by them at the time they made their purchases of said land; and if the claim of the respondent is allowed, he will be given some land he did not think he was getting, and the appellant will be compelled to give up a portion of his land, including his improvements.

It is virtually conceded that about the same condition exists throughout said township of land. Roads have been established on the lines established by said private survey; fences have been built according to that survey; trees and orchards have been planted; buildings and other improvements have been constructed all over said township of land in accordance with the lines of said private survey. It appears that the whole township of land has been settled up in the last two or three years, and that this is a suit to test the question whether the people who selected their lands and made purchases in accordance with said private survey shall now be compelled to change everything and conform to some other survey.

If the contention of the respondent is correct, all persons in said township who purchased their lands according to the lines established by said private survey will have the lines of their lands changed, and no doubt many of them will be compelled to change their fences, buildings, orchards, irrigating ditches and other improvements. This certainly is a peculiar case, and the decision of it will no doubt have a far-reaching effect.

Under the facts above stated, can the rule of estoppel *in pais* be applied as against the respondent? It is stated in 5 Cyc., at page 937, as follows: "A person who, by his conduct or by erroneous statements and representations as to the boundaries of land, induces another to purchase in reliance on such conduct or statements will be concluded thereby. Conversely, where a person purchases according to boundaries specifically pointed out, marked on the ground, he is estopped subsequently to claim other boundaries to the injury of others."

In the case at bar, it appears that the land and water company was interested in the sale of this land, had said private survey made, as the corners and boundaries of the government survey had been obliterated, and that company induced the respondent to purchase said lot 2 and pointed out to him the lines of said private survey as being the lines of said lot and he purchased with that understanding. They thereafter pointed out to the appellant lot 1 with its boundaries as established by said private survey, and he purchased, believing that said boundaries were the correct boundaries of said lot. The respondent assisted the appellant in constructing the division fence between said lots on the line established by said private survey. While it is not alleged that the lines of said private survey were specifically pointed out to the appellant by the respondent, they each purchased, respectively, lots 1 and 2, in accordance with said private survey, and we think under those facts the respondent is estopped from claiming a different boundary between said lots to the injury of appellant.

While it is true that the defendant may not have induced the appellant to purchase said lot, it is true that they both bought believing that said line was the correct dividing line between the lots and established their improvements thereon with reference thereto. The dividing line fence was built with the acquiescence and the assistance of the respondent. In *Heffner et al. v. Downing,* 57 Tex. 576, it was held that if a party establishes and marks a boundary to his land without the exercise of proper care in determining the true line, his

negligence has the same effect as to the parties misled by it as if he had acted knowingly, and that the agreement to establish a boundary line may be implied from acquiescence.

It is held in Tyler's Law of Boundaries, edition of 1874, page 333, that "In a contest of boundary between two parties who have purchased adjoining tracts from a common vendor, the line which their vendor had caused to be run as the dividing line between the two tracts before he sold them will be recognized as the dividing line between the parties deriving title from him."

While in the case at bar the government, the real vendor. did not point out the boundaries, the land and water company did point out the boundaries, and that company in fact controlled the sale of the land included in said township. They controlled it to this extent: Water had to be purchased from them to irrigate the same and reclaim it from its desert condition. The land had been segregated under the Carey act and the settler was only required to pay fifty cents an acre for the land and twenty-five dollars an acre for water. The Twin Falls Land and Water Company, therefore, controlled the sale of said land, to a large extent, at least, and both the appellant and respondent purchased their lands upon the representations and showing made to them by the agents of that company—at least so far as the boundaries thereof were concerned.

The respondent, no doubt, would have been perfectly satisfied with his boundaries as established by said private survey had not other boundaries given him better land or better advantages; and perhaps the appellant would not have purchased the lot that he did purchase if the respondent had claimed to the boundary that he is now claiming. He, therefore, encouraged the plaintiff in making said purchase, to the extent that he at that time claimed the boundaries of his lot as made by said private survey.

It is said by Herman on Estoppel, section 419, that "a man will not be permitted to recover land which he has encouraged another to occupy and improve, even when the encourage-

ment was given under the influence of a mistake and in ignorance of his own better right.''

And in section 422, the author states: ''When a man has encouraged another to settle on and improve land and expend money upon it, he will not be permitted afterward to take it from him although he has an older and better title, and acted himself in ignorance of his own right.''

It was held in *Galbraith v. Lunsford*, 87 Tenn. 89, 9 S. W. 365, 1 L. R. A. 522, that where there is a doubt or ignorance as to the true locality of a line, a parol agreement fixing the line between the adjoining owners is not within the statute of frauds, and where satisfactorily established, will be enforced by the courts, notwithstanding it may afterward be demonstrated that the agreed line was erroneously fixed.

In that case there was acquiescence of parties and the expenditure of money in making permanent improvements with knowledge on the part of both parties. The case of *Rowell v. Weinemann*, 119 Iowa, 256, 97 Am. St. Rep. 310, 93 N. W. 279, was a case where the plats and field-notes of the government survey differed from lines as actually run and monuments placed by the surveyors on the ground to mark the corners, and it was held that the monuments placed on the ground to mark the corners would control and not the field-notes and plats, and the court in that case said: ''On the face of the record it would be most unjust and inequitable to hold that all these corners and boundaries should now be changed to correspond with the plat and field-notes which are clearly shown to be erroneous and incorrect. To do so would mean much more than a mere decree for the plaintiff in this particular case. It would necessitate the relocation of highways, the removal of schoolhouses and bridges; in fact, an entire rearrangement of fences and improvements over the whole of the north end of the township.''

So in the case at bar, if it be true that this entire township of land has been settled upon and improved in accordance with the lines established by said private survey, it would necessitate the relocation of highways and the removal of improvements and bridges, and would in all probability

require a rearrangement of the land owners' improvements all over said township of land. While that case differed from the one at bar, in that there was a conflict between the plats and field-notes of the government survey and the monuments marking the corners, in the case at bar the monuments marking the corners whereby the lines of the government survey could be traced were all obliterated and had been torn down—destroyed—or perhaps had never been put there, and all of the purchasers on said tract of land had purchased and were holding their lands in accordance with the lines established by said private survey. (See, also, *Thompson v. Borg,* 90 Minn. 209, 95 N. W. 896; *Briscoe v. Puckett* (Tex.), 12 S. W. 978; *Anderson v. Jackson* (Tex.), 13 S. W. 30; *Parrish v. Williams* (Tex. Civ. App.), 79 S. W. 1097; *Spiller v. Scribner,* 36 Vt. 245.)

In *McGee v. Stone,* 9 Cal. 600, the court held the fact that such a line was fixed by mistake as to the true boundaries, areas and corners makes no difference as to the subsequent purchaser who purchased with a view to this line.

It was known to both respondent and the appellant that the government survey marks and monuments had been obliterated or could not be found within said township, and that the land was being sold and disposed of under said private survey.

To establish estoppel in cases like the one at bar, it is not necessary to show that there was any intent to mislead, deceive or defraud, and the fact that the line was fixed by mistake makes no difference. The old-time doctrine of estoppel that there must be an intent to deceive or defraud by word, act or deed is not necessary to establish an equitable estoppel. But it is sufficient to establish such estoppel if, as under the facts of this case, the parties purchased their lands under the guidance and direction of the agents of the land and water company, each having full knowledge that the lines by which they purchased had been established by private survey, each having viewed the lands and its boundaries as established by such survey, and purchased supposing that

said survey was correct. Those facts are sufficient to estop the first purchaser from thereafter claiming any portion of the land without the boundaries of the land so purchased by him as marked on the ground by such survey.

The judgment must be reversed and the cause remanded, with instructions to overrule the demurrer to the complaint and permit the respondent to answer, in case he desires to do so. If he does not desire to answer, judgment must be entered in favor of the appellant as prayed for in the complaint.

Costs of this appeal are awarded to appellant.

AILSHIE, C. J., Concurring.—I concur in a reversal of the judgment of the lower court. In doing so, however, I have thought it best to make some observations as to my reasons therefor, in view of the position taken by my associate in his opinion herein. I do not think the right of the plaintiff depends upon his invoking the doctrine of estoppel against his adversary; neither can I concur in that broad, and, as it seems to me, too dangerously liberal doctrine of estoppel announced by my associate. In order that a man be estopped from thereafter urging in a court of justice the true facts in his case, it must be made to appear that he has either spoken to or acted toward his adversary in such an unconscionable or deceptive manner as to render it inequitable and unjust to allow him thereafter to tell the real truth in his case and assert what would otherwise be his true rights. I know of no instance in which a man who has acted honestly, fairly and truthfully toward his adversary can or should be precluded from thereafter asserting his rights based upon the facts in his case, irrespective of the loss it may entail upon his adversary.

The case at bar differs from the ordinary case in this country where lands have been located upon or purchased and title taken in accordance with the government surveys. In all such cases the grantee takes his title with notice and the understanding that his boundaries are wherever the government surveys are established. In this case, however, the parties, while receiving their grant from the general

government, were in fact dealing with the land and water company, which was in effect the representative of the state. This land was purchased after the parties had been taken upon it and shown the boundary lines established and marked by monuments, and if the allegations of the complaint are to be believed, as they must be for the purposes of this case, this land was purchased by specific tracts clearly and plainly marked upon the surface, rather than with reference to the government boundaries and subdivisions. In other words, when the parties went upon the ground, they found it marked off and staked, and it was represented to them that the stakes set and marks found upon the surface coincided with the government lines, and that a description given by government subdivisions would conform to and coincide with that found upon the surface of the ground.

In such a case, if it should thereafter appear that there was an actual difference between the description as given in the instrument and the physical marks and boundary placed upon the ground, the former would necessarily yield to the latter, and so it is here. The question resolves itself to this: What land did the plaintiff purchase? Did he purchase the land as marked and bounded by physical monuments upon the surface thereof, or did he buy land to be bounded by an imaginary line that it was represented to him coincided with the actual markings upon the ground? The only thing to be determined in this case is what land the plaintiff purchased, and we answer that question by saying that he purchased the land as it appeared staked and marked and bounded upon the surface thereof when he went upon it, inspected it and purchased it, and that is the land he is entitled now to have, and he should have a decree quieting his title and establishing his right to this specific and identical tract of land. For the foregoing reasons I concur in reversing the order and judgment of the trial court and remanding the cause for further proceedings.