(December 31, 1921.)

GUSTAV P. SCHMIDT and EMMA SCHMIDT, His Wife, Respondents, v. J. W. WILLIAMS and OLIVE E. WILLIAMS, His Wife, Appellants.

[203 Pac. 1075.]

BOUNDARIES—ADVERSE POSSESSION—ESTOPPEL—INSTRUCTIONS—PROCEDURE.

1. In order for a boundary line established by a common grantor of lands on both sides of such line to become binding and conclusive upon the grantees, it must plainly appear that the land was sold and purchased with reference to such line and that there was a meeting of minds as to the identical tract of land to be transferred by the sale.

2. In order for one to obtain title to land by adverse possession, such possession must be hostile as against the true owner and the world at its inception.

3. One who occupies land adjoining a partition fence which is built in ignorance of the true division line, under an agreement

Publisher's Note.

3. Possession taken and held beyond boundary through mistake or ignorance constituting adverse possession, see notes in 24 Am. Rep. 388; 15 Ann. Cas. 827; Ann. Cas. 1912A, 450; 21 L. R. A. 829; 33 L. R. A., N. S., 923.

that the land shall be surveyed in the future and the partition fence then moved to the true division line, does not occupy the land in hostility to the true owner.

4. It is not error to refuse to give a requested instruction when the proposition of law contained therein is sufficiently covered by other instructions given by the court.

5. It is not reversible error for the trial court to depart from the order of procedure indicated by C. S., sec. 6847, where no objection was interposed to the order of procedure adopted by the court and no request proffered to the court to follow the order indicated by the statute.

APPEAL from the District Court of the Tenth Judicial District, for Idaho County. Hon. Wallace N. Scales, Judge.

Action in ejectment. Judgment for plaintiffs. *Affirmed.*

J. F. Ailshie and A. S. Hardy, for Appellants.

The evidence is insufficient to support the verdict and judgment. (*Taylor v. Reising,* 13 Ida. 226, 239, 89 Pac. 943; 9 C. J. 234; *Zehner v. Castle,* 27 Ida. 215, 148 Pac. 470; *Bayhouse v. Urquides,* 17 Ida. 286, 105 Pac. 1066; *Brown v. Brown,* 18 Ida. 345, 110 Pac. 269; *Idaho Land Co. v. Parsons,* 3 Ida. 450, 31 Pac. 791; 9 C. J. 271; *Lawrence v. Washburn,* 119 Iowa, 109, 93 N. W. 73; *Buch v. Flanders,* 119 Iowa, 164, 93 N. W. 101; *Turner v. Creech,* 58 Wash. 439, 108 Pac. 1084; *Holmes v. Judge,* 31 Utah, 269, 87 Pac. 1009; *Columbet v. Pacheco,* 48 Cal. 395; *Carpenter v. Rose,* 186 Ky. 686, 217 S. W. 1009.)

Refusal of court to instruct jury prior to argument was error. (C. S., sec. 6847.)

The court erred in refusing to give defendant's instruction No. 10. (*Taylor v. Reising, supra;* 9 C. J. 244, 245, sec. 197; 247, notes 22 and 23.)

Respondent is estopped from asserting title to this strip of land. He stood by and saw valuable improvements placed on the land by appellant and knew appellant was claiming the land as his and was then occupying and improving it. (Herman on Estoppel, sec. 735; *Farber v. Page & Mott Lumber Co.,* 20 Ida. 354, 118 Pac. 664; *Town*

*v. Needham,* 3 Paige Ch. (N. Y.) 545, 24 Am. Dec. 246; *Orient Mining Co. v. Freckleton,* 27 Utah, 125, 74 Pac. 652; *Newport Water Co. v. Kellogg,* 31 Ida. 574, 174 Pac. 602; *McGinness v. Stanfield,* 6 Ida. 372, 55 Pac. 1020; *Knowles v. New Sweden Irr. Dist.,* 16 Ida. 217, 101 Pac. 81.)

B. Auger, M. Reese Hattabaugh and F. E. Fogg, for Respondents.

"Where a line is established, as the evidence shows the division lines were established in this case, with the understanding that when a survey was made and a true line ascertained the parties would place their fences thereon, it would be most unjust and inequitable to hold that they had consented and agreed to make that line the true boundary line, when there was no evidence to that effect introduced on the trial." (*Brown v. Brown,* 18 Ida. 345, 110 Pac. 269.).

Payment of the taxes assessed upon land during the claimant's occupancy of it, is necessary to establish adverse possession. (*Webb v. Clark,* 65 Cal. 56, 2 Pac. 747; *Ross v. Evans,* 65 Cal. 439, 4 Pac. 443; *McNoble v. Justiniano,* 70 Cal. 395, 11 Pac. 742; *McDonald v. Drew,* 97 Cal. 266, 32 Pac. 173; *Baldwin v. Temple,* 101 Cal. 396, 35 Pac. 1008.)

"Statute makes payment of taxes as important an element as actual occupancy of the land for the purpose of gaining title by adverse possession, and burden is upon claimant to do acts required to create adverse title." (*Cavanaugh v. Jackson,* 99 Cal. 672, 34 Pac. 509; *Dickerson v. Hansen,* 32 Ida. 18, 177 Pac. 760; *Brose v. Boise City R. & Terminal Co.,* 5 Ida. 694, 51 Pac. 753; *Swank v. Sweetwater Irr. etc. Co.,* 15 Ida. 353, 98 Pac. 297.)

RICE, C. J.—This is an action to recover possession of a triangular tract of land, 13.21 acres in extent, lying along the southerly boundary of the N. ½ SE. ¼ of section 5, Tp. 31 N., R. 2 E., Boise Meridian, in Idaho county. The plaintiffs recovered judgment and the defendants have appealed.

In June, 1910, the entire quarter-section was the property of the Bales-Jones Company. On June 23, 1910, the north half of the quarter-section was sold at public auction to Max Leishner, predecessor in interest of respondents. Thereafter the south half of the quarter-section was sold and conveyed to appellants at private sale. Testimony was introduced at the trial to the effect that in May, 1910, the Bales-Jones Company had caused a survey to be made for the purpose of designating the line dividing the north and south halves of said quarter-section, and that a post or stake, surrounded by a pile of rocks, was located to designate the east end of the division line and a stake or pole was wired to a fence to designate the west end. It is conceded that the west end of the division line, if so located, was north 369.6 feet of the true line dividing the north and south halves of the quarter-section. The tract in dispute lies between the true boundary line and that claimed to have been laid out by the Bales-Jones Company as above stated.

Appellants contend that the evidence is insufficient to support the verdict and judgment, in that it was shown that the common grantor of both appellants and respondents, while owner of the land, permanently erected monuments upon the ground at both ends of the division line for the purpose of locating a line between the tracts and sold the land to appellants and the predecessor of respondents with reference to the monuments and marks on the ground, and insist that such monuments and marks are conclusive upon the parties to this action.

Among other authorities, appellants rely upon the case of *Taylor v. Reising,* 13 Ida. 226, 89 Pac. 943, in support of that contention. The facts are very fully set out in the opinion in that case, and it is unnecessary to repeat them here. Under the facts in that case it was held that the purchasers were concluded by the boundary line established by a private surveyor. The concurring opinion very aptly stated the problem confronting the court in that case as follows: ''The question resolves itself into this: What land did the plaintiff purchase?''

In the case of *Herse v. Mazza,* 100 App. Div. 59, 91
N. Y. Supp. 778, it is said: "It does, however, appear that
before the conveyances on either side were made by the
common grantor, and while the defendants' grantor was
in possession, but preceding the date of the conveyance,
and at about the time when the plaintiff Ellen Herse pur-
chased under a contract for a conveyance, one of the
common grantors caused the now disputed line to be located
by a surveyor and marked the boundary as so located.
Lay, then in possession of lot 47, the title to which she
subsequently acquired, and Herse, in possession of lot 46,
acquiesced in such boundary so ascertained, and Lay moved
back her building so that its west side lay upon such
boundary then ascertained, and the possession of each con-
formed to such boundary for about ten years, and down
to 1896. . . . . This location as made upon the ground, and
the acquiescence following, are conclusive upon the de-
fendants, and this boundary must remain as then located,
even if it was located erroneously, as might be subsequently
determined. (*Reed v. Farr,* 35 N. Y. 113; *Baldwin v.
Brown,* 16 N. Y. 359; *Smith v. Faulkner,* 48 Hun (N. Y.),
188; *Sherman v. Kine,* 86 N. Y. 57.) The actual location
then made, and with reference to which the parties con-
tracted and took their titles on either side, will control, and
is conclusive upon the question of the true location. (*Van
Wyck v. Wright,* 18 Wend. (N. Y.), 158.) This does not
rest upon any presumption of fact that the parties have
agreed upon a different boundary than the deed bound-
ary, but upon the conclusive presumption that they found
and correctly located the deed boundary, and that they
subsequently took title on either side under their deeds,
which described their lands to that boundary, and that such
boundary line, open, notorious, and plainly marked upon
the ground, is the boundary referred to in their respec-
tive deeds. Clearly, it was the intention of both parties
taking their title from Chamberlain to take to the boundary
which he fixed and marked. That was the line referred
to in their contracts for their conveyances, and the one

which all parties understood to be the boundary between the lots. And it is a principle of most common application in the determination of boundaries, as well as in the construction of contracts, that the intention and understanding of the parties at the time of the contract or conveyance must govern, when ascertained.''

See, also, *Osteen v. Wynn*, 131 Ga. 209, 127 Am. St. 212, 62 S. E. 37.

In view of the authorities above quoted, in order for the act of the common grantor in establishing a boundary line to become binding and conclusive upon the grantees, the tracts of land adjoining the line must not only have been sold according to the boundary so established by the seller but also so purchased by the buyer. It must plainly appear that there was a meeting of the minds as to the identical tract of land to be transferred by the sale. The question before us, therefore, is whether the evidence is so conclusive upon this point that there was no substantial evidence to justify the verdict. It will be necessary, therefore, to briefly refer to the evidence.

The depositions of Thomas W. Bales and Robert L. Maxey, president and secretary, respectively, of the Bales-Jones Company, were read in evidence. They each testified that about the first of May, 1910, the Bales-Jones Company caused a survey to be made by Maxey and one Spedden, county surveyor of Idaho county; that the object of the company in making this survey was to establish and fix what should be taken to be the boundary line between the north and south halves of the southeast quarter of section 5, and that marks and stakes were set in place before the day of the public sale to designate the line so established. They also testified that on the day of the sale the auctioneer publicly announced that the lines were established by county surveyor Spedden. Mr. Williams, one of the appellants, testified that he was told by the officers of the Bales-Jones Company of the two monuments; that he examined the land and found them in place and purchased the land with reference thereto. On behalf of

respondents there was testimony to the effect that the
purchase at the auction sale of the north half of the quarter-
section by Max Leishner was made through his brother
Joe Leishner, acting as his agent. Joe Leishner testified
that he took his saddle-horse and rode over the premises,
looked for corners but never found any; that nobody ever
notified him that any boundaries had been staked out. At
the time of the sale Max Leishner, the purchaser, was in
Europe and returned in July or August following. He
testified that neither Bales or Jones, or any of their agents,
ever told him anything about the boundary; that he never
saw any monuments—"I never saw a stick or I never saw
a stone." He seeded the ground lying along the north
line of the tract in controversy to wheat. When the wheat
was coming up he testified that he insisted that a fence be
built in order to protect his crop from some horses of
appellants which were running loose on appellants' land.
He further testified that the fence was erected by himself
and appellants, but that neither he nor they knew exactly
where the line was, and that it was agreed that the fence
erected should be temporary and the line should afterwards
be surveyed and a permanent fence erected on the true line.
Mr. Spedden, called in rebuttal, testified that he did not
establish any corners for Bales-Jones Company in May, 1910;
that he started to make a survey and ran a line along the
east side of the tract of ground in controversy but did not
complete it; that Bales-Jones Company found it would take
two or three days to complete the survey and did not care
to take so much time; that there were no corners set by him
at that time.

The credibility of the witnesses was for the jury. It
was the province of the jury to give such weight to the
testimony of Max Leishner and Joe Leishner, and Spedden
in rebuttal, as they deemed it was entitled to receive. It
cannot be said that there was no substantial evidence to
support the verdict of the jury in this respect.

Appellants lay stress upon the fact that Max Leishner,
when he seeded the ground to wheat, seeded it to the line

as located by the stakes which they claim were erected by Bales-Jones Company, and that he built his portion of the fence along the same line. It is contended that the action of Max Leishner belied his words, and that since actions speak louder than words the conclusion is rendered incontestable that the stakes designating the boundaries were in place as the witnesses for appellants testified and were known to Max Leishner and that he built his fence accordingly. Such an inference might be drawn from the act of Max Leishner. But the drawing of inferences is peculiarly the province of the jury, and if the jury concluded that such an inference did not necessarily arise this court should not disturb its conclusion.

Appellants also pleaded title by adverse possession, and that the respondents' cause of action was barred by the statute of limitations. Here, too, there was a conflict in the testimony and if the jury believed the testimony on behalf of respondents to the effect that appellants admitted that the fence when constructed was not on the true line and agreed that the land might be subsequently surveyed and the fence located on the true line, it would preclude the claim of appellants that they were holding the land in controversy adversely to respondents. If this testimony was believed, appellants' possession did not become hostile and adverse until about the beginning of the year 1918. (1 R. C. L., p. 703, sec. 16.) Furthermore, appellants and respondents paid taxes on their respective tracts of land assessed as legal subdivisions. In view of the testimony in this case, under the authority of *Brown v. Brown,* 18 Ida. 345, 110 Pac. 269, we must hold that appellants failed to prove payment of taxes upon the tract of land in controversy.

It should be noticed, however, that the claim of appellants that the common grantor established the boundary line between the two tracts, and their claim of title by adverse possession, do not depend one upon the other. If appellants had been sustained in their first contention, the question of adverse possession would not arise, for in that event each

would have possession of the land which he bought and neither the question of adverse possession or payment of taxes would be material.

On the question of estoppel, also pleaded by appellants, the evidence was likewise conflicting. If the jury gave credence to the testimony on behalf of respondents, some of the material elements of estoppel would be lacking.

Appellants also assign as error the failure of the court to give requested instruction No. 10, which is as follows: "I instruct you further that the calls in a deed or references to a survey are controlled by monuments erected on the ground by the owner to mark such boundaries; and that if there is a discrepancy the monuments control."

The court did not commit error by refusing to give this instruction. The deeds in evidence in this case conveyed the land by legal subdivisions only. Except for the extrinsic evidence introduced at the trial, the only monuments to which the deed itself could refer would be the monuments of the government survey. In order for any other monuments to be controlling, it must be shown, as above pointed out, that all parties to the transaction took the conveyance with reference to other monuments. This matter was covered sufficiently by appellants' requested instruction No. 1, which was given by the court.

Appellants further assign as error the failure and refusal of the court to give the instructions in writing submitted and requested by them prior to the argument of the case to the jury.

C. S., sec. 6847, reads in part as follows: "When the evidence is concluded and before the case is argued or submitted to the jury, either party may request the court to give to the jury instructions in writing on the law arising in the cause which shall be given or refused as asked: Provided, that the court may also give other and further written instructions of its own motion. All of the written instructions given shall be carried by the jury to their room for their guidance in arriving at a correct verdict according to

the law and the evidence. The instructions shall then be read to the jury by the court, and unless the case is submitted to the jury without argument, the plaintiff must commence and may conclude the argument.''

It appears from this statute that the instructions should be read to the jury before argument of counsel. The record does not disclose that appellants interposed any objection to the order of procedure adopted by the trial court, or requested the court to proceed in the order indicated by the statute. Had such objection or request been made, the case might be different. We do not think such a departure as this from the order prescribed by the statute should be held to be reversible error, in the absence of such request or objection.

The judgment is affirmed, and it is so ordered, with costs to respondents.

McCarthy, Dunn and Lee, JJ., concur.

Budge, J., sat at the hearing but took no part in the opinion.