(Nos. 6275, 6276.   May 1, 1936.)

WINFIELD A. McLEAN, as Receiver of the Washington National Bank in the City of Tacoma, Respondent, v. LEANORA ROW and HENRY BAUER, Appellants; also In the Matter of the Application of LEANORA ROW for Transfer of Water Right—District Number 36.

[57 Pac. (2d) 689.]

Ralph Litton, for Appellants.

C. W. Poole, for Respondent.

GIVENS, C. J.—This appeal involves two cases which were consolidated for trial below. The first case was brought by Winfield A. McLean, as receiver of the Washington National Bank of Tacoma, to quiet title to a one-half interest in 4.4 cubic feet per second of irrigation water in the Teton River, and the second case involving the same water right arose by appeal from an order of the Commissioner of Reclamation granting a petition for change of place of use of the aforesaid water right. But one set of briefs was filed, and one set of assignments of error covered both appeals. Our discussion below will therefore apply to both decrees and judgments appealed from.

July 8, 1895, McCormick secured a patent from the United States government to the E.$\frac{1}{2}$ of the NW.$\frac{1}{4}$, and W.$\frac{1}{2}$ of the NE.$\frac{1}{4}$ of Section 11, Township 6 N., R. 40 E., B. M. By mesne conveyances the land was thereafter transferred to the Warm River Livestock Company which in turn executed a mortgage thereon which by a series of assignments came into the possession of the Washington National Bank in the

City of Tacoma, of which institution, upon its insolvency, respondent became receiver, and as such foreclosed the mortgage. The various deeds contain this provision:

"This deed also conveys all right, title and interest of first parties to all water rights, consisting of a one half (½) interest of ten cubic feet per second water right in the Teton River. Which water right is of record and was filed upon and taken out by said Morris McCormick and R. H. Row."

R. H. Row and wife were respective grantees and grantors in the chain of title to the real property.

September 25, 1895, McCormick and Row filed for record in the recorder's office in Fremont County a notice of water right reciting therein:

"1st. That Morris McCormick and Reuben H. Rowe of Teton City, Idaho hereby claim the use of the waters of Teton River, East Branch to the extent of 10 cubic feet per second. . . . .

"3d. The purpose for which said water is used is for agricultural and domestic. . . . . We have used the said water for irrigating the following described land: The W.½ of SE.¼ and E.½ SW.¼ Sec. 2; and the W.½ of NE.¼ and E.½ NW.¼ Sec. 11 Twp. 6 North, Range 40 East, Boise Meridian. . . . .

"5th. Said works have been completed and operated for the last eight years."

The Teton River is the source of supply of all the claimed water rights involved herein and is a tributary of the Snake River. December 16, 1910, the so-called Snake River Decree which covered the waters of the Teton River was entered awarding the following rights:

"Rowe, Reuben H., and Morris McCormick, 430 inches, Apr. 1, 1898, Teton River, through McCormick & Rowe ditch."

"Rowe, Reuben H., and Morris McCormick, 220 inches, June 1, 1879, Teton River, through McCormick & Rowe ditch."

with this description of the land entitled to such water:

"McCormick, Morris, E.½ of NW.¼ and W.½ of NE.¼ of Sec. 11 T. 6 N. R. 40 E. B. M. containing 160 acres. . . . .

"Rowe, Reuben H., E.½ of SW.¼ and W.½ of SE.¼ of Sec. 2, T. 6 N. R. 40 E. B. M. containing 160 acres.''

The water right based upon the 1895 notice above recited dating by relation 8 years prior to September 25, 1895, to 1887, was omitted from and not adjudicated as a right to Row and/or McCormick in the 1910 decree, and the action herein is as to said decree a collateral attack, against which the decree stands as an adjudication until modified in a proper action of all the water rights from the Teton River to which the lands in question are entitled. (*Stethem v. Skinner*, 11 Ida. 374, 82 Pac. 451; *Lambrix v. Frazier*, 31 Ida. 382, 171 Pac. 1134; *Neil v. Hyde*, 32 Ida. 576, 186 Pac. 710; *South Boise Water Co. v. McDonald*, 50 Ida. 409, 296 Pac. 591.) In 1931 respondent's claim to any share or interest in the 1879 right was denied, resisted and disclaimed by appellants and this action was brought to quiet title to a one-half interest in the 220 inches or 4.4 cubic feet of the 1879 right.

Appellants took the position that what the Rows intended to convey to Shupe by their deed of July 10, 1916, was one-half of the water right in the 1895 notice of water right as of 1887. Testimony was introduced by both sides as to the water used on the respective places and as to the intention of Mr. Row, now deceased, and his wife, in giving the deed to Shupe. Evidence of definite and specific amounts of water used was not given because of the lack of measuring devices, and that most of the watering was done by sub-irrigation rather than surface flow. There was a sharp conflict in the evidence as to whether part of the 1879 water had been used on respondent's land under a claim of right or by appellants' permission. As to the various transfers and the recitations in the deeds and in the 1910 decree, there is no dispute.

The court's solution of the controversy was contained in these findings:

"22.—The water right decreed to Morris McCormick and Reuben H. Row as aforesaid was used on the lands above described in Section 2 and in Section 11 by Reuben H. Row until July 1916 at which time he and his wife executed the

deed of the land in Section Eleven to James R. Shupe, and thereafter a part of the 220 inches of the 1879 right was used on the land above described in Section Eleven by Shupe and his successors in interest until and including the year 1931, but the exact amount so used on the land in Section Eleven was not measured and cannot be determined.

"23.—During a part of said time the water rights to the lands in Section Eleven were used through the McCormick & Row ditch, and at other times the water was used through what was called by witnesses the Shupe Slough. The Shupe Slough is a natural channel which takes out of the Teton River and flows across a part of the land herein described in Section Eleven.

"24.—In 1931 Reuben H. Row died and before his death he attempted to prevent the use of said water on the land in Section Eleven. The occupant of said land in Section Eleven continued to use during 1931 sixty inches of said water right.

"25.—In 1932 the water under this right was not used through the McCormick & Row ditch. That said ditch flows across the land belonging to the defendant Leanora Row and it was not permitted to reach the land in Section Eleven. But, the occupant of said land produced crops on said land in Section Eleven by reason of the water being unusually high in the Teton River."

"27.—At no time after December 1916 the date of the decree of the waters of Snake River and its tributaries, was there a period of five successive years during which a part of the said 1879 water right was not applied to beneficial use on the lands herein described in Section Eleven.

"28.—At no time prior to 1931 did Reuben H. Row or Leanora Row or any other person attempt to prevent the use of a part of the 220 inches of the 1879 water right upon the land in Section Eleven hereinbefore described.

"30.—The only right which said R. H. Row and Leanora Row, his wife, owned for use upon the land described in the deed to James R. Shupe at the time said deed was made was the two rights described in the aforesaid decree, aggregating thirteen cubic feet per second of water right in the Teton River."

And as a conclusion of law awarded 5/13 respectively of the 1898 right and the 1879 right to respondent, which amounted to 84.6 miner's inches, equivalent to 1.692 cubic feet per second of time of the 1879 right, on the theory, evidently, that the deed recited one-half of ten cubic feet of water, which would be five cubic feet; that the 1887 right was of no effect; that the 1879 and 1898 rights were in effect recorded by being entered in the 1910 decree; that at the time Row and his wife deeded the land to Shupe in 1916 the only recorded water rights they had were those of 1879 and 1898, and that five cubic feet would be 5/13 of the two rights or as to the 1879 right the number of inches above set forth.

While the 1887 notice was the only one that specified ten cubic feet, if the recitation in the deeds by stating one-half of ten cubic feet referred to the 1887 right no water was in fact thereby transferred. The grantors must be held to have intended to grant some water right, and no priority date is given in any of the deeds, and it is virtually conceded that the 1898 right is of no low water value.

While numerous assignments of error are urged and several points of law are argued by both parties, both in effect unite upon this principle of law that the intention of the parties to a deed is to govern and that such intention is to be gained from the instrument itself if possible (*Meir-Nandorf v. Milner*, 34 Ida. 396, 201 Pac. 720; *Vaughan v. Hollingsworth*, 35 Ida. 722, 208 Pac. 838; *Koon v. Empey*, 40 Ida. 6, 231 Pac. 1097; 18 C. J. 252, sec. 198), and when it cannot be determined therefrom because the language of the deed is ambiguous, the intention must be determined from all the surrounding facts and circumstances. (*Koon v. Empey, supra; Gould v. Frazier*, 48 Ida. 798, 285 Pac. 673; *Cooper v. Shannon*, 36 Colo. 98, 85 Pac. 175, 118 Am. St. 95; 18 C. J. 260, sec. 217; Kinney on Irrigation, second edition, vol. 2, p. 1790, sec. 1007.)

The evidence though conflicting and in some respects meager is amply sufficient to support the court's findings, conclusions and decree under the above guiding rule of interpretation, and the solution arrived at by the trial judge, in view of the state of the record, is an equitable one and fairly determines the rights of the parties.

The decrees are therefore affirmed. Costs awarded to respondent.

Budge, Morgan, Holden and Ailshie, JJ., concur.