245 P.2d 1052 .

**CAMPBELL et ux. v. WEISBROD et al.**

**No. 7822.**

Supreme Court of Idaho.
June 19, 1952.

Donart. & Donart, Weiser, for appellants.

William J. Dee, Grangeville, for respondents.

TAYLOR, Justice.

Plaintiffs (respondents) brought this action to quiet their title and to oust the defendants (appellants) Ray Weisbrod and Doris M. Weisbrod, husband and wife, from the possession of what they allege to be a part of the property described in their complaint, as follows:

"A tract of land lying west of the North and South Highway and east of the Little Salmon River in Section Nine (9) Township Twenty-two (22) North Range One (1) East Boise Meridian and lying north of the Highway bridge in said section, more particularly described: Commencing at the point of intersection of the middle of the North and South Highway as it crosses the Little Salmon River, thence northerly following the middle of the channel of the Little Salmon River approximately 759 feet; thence east Two Hundred (200) feet to the West bound-ary of the North and South Highway; thence southerly along the West boundary of the North and South Highway approximately 759 feet to the place of beginning."

Originally the property described was a part of a larger tract owned by Elgie B. Bratland. Mrs. Bratland conveyed the entire tract to the defendant Ray Weisbrod in 1939. September 9, 1946, Weisbrod and wife conveyed the property herein described to C. E. and Agnes A. Austin. December 6, 1947, the Austins conveyed the same property to the plaintiffs.

June 26, 1946, Weisbrods had conveyed to one Ross a 300 foot tract on the north end of the original property. A question was raised as to a mistake in the description of this tract, which does not concern us further.

In 1950, the plaintiffs had a survey made. The plat made by the surveyor is in evidence as plaintiffs' "Exhibit 7" and is appended hereto to supplement the statement of facts.

The controversy concerns the true location of the boundary line between the property conveyed (through the Austins) to the Campbells, and that retained by the grantors Weisbrod; the plaintiffs claiming that the line is to the north of the "house" indicated on the plat; the defendants claiming that the line extends across the property from west to east twenty feet south of the "house." The evidence shows that the house referred to, and which is

-3-

SW¼ NE¼ Sec. 9,
Twp. 22 N, Rge 1 E.

SURVEY MAP
OF
CAMPBELL'S TOURIST CABIN TRACT
IN
SW¼ NE¼ Section 9, Twp 22 N, Rge 1 E.
Scale 1 inch = 100 feet, October, 1950
Surveyed, Platted by H A Heron Licensed Surveyor

Plfs. Ex... ¢ Ident.
In Evidence

located on the disputed area, was occupied by the defendants Weisbrod as their home at the time of their conveyance to the Austins, and at the time of the conveyance by the Austins to the plaintiffs, and thereafter continuously to the time of trial.

When Weisbrods were negotiating to sell to Austins, they went with Austins to Lloyd's Agency, a real estate office at Weiser, and advised the real estate agent that they wanted a deed drawn to convey all of the property from the bridge on the south to a point twenty feet south of their house on the north. The agent mistakenly informed them that the house would not be a suitable monument and told them "they would have to go back home and measure it out." They later came back, stating that they had measured the land and had located a rock twenty feet from the house, which they had established as a corner. Although not precisely stated, it is apparent from the record that this rock was located on or near the west line of the highway at a point where an east-west line through it would pass approximately twenty feet south of the house.

The real estate agent then prepared the deed describing the property, as herein set out, but without referring to the monument agreed upon. This location of the line was testified to by the real estate agent and Mr. and Mrs. Austin. At the time of the conveyance by Austins to Campbells, Mr. and Mrs. Austin and Mr. and Mrs. Campbell went to the same real estate agent in Weiser. Austins produced their deed from Weisbrods and the description therein was copied into the deed then executed by Austins conveying the property to Campbells.

The real estate agent testified to the conversation between the grantors and the grantees on that occasion to the effect that it was agreed between them that the north boundary of the property was twenty feet south of the Weisbrod house; that the large rock previously agreed upon as the northeast corner had been replaced by a light pole; "that they had been down and looked it over" and that they understood the line was approximately twenty feet south of the Weisbrod house.

Mr. and Mrs. Austin testified that prior to the making of the deed to the plaintiffs, they pointed out to them the north boundary as indicated from the utility pole and that the plaintiffs expressed satisfaction with the location of the line and discussed with them the possibility of buying the Weisbrod property. Mrs. Bratland testified that she was there on one occasion when Campbell came up; that there was shrubbery along the line, and, referring to Campbell, "He said he was perfectly satisfied where they had the line established", which was twenty feet south of the house.

On his rebuttal, the plaintiff, C. C. Campbell, denied the conversations with Mr. and Mrs. Austin and denied that Mr. Austin showed him where the north boundary was.

The foregoing testimony, produced by the defendants as to the conversations and agreements between Weisbrod and Austins prior to the conveyance to the latter, and between the Austins and the plaintiffs preceding the conveyance to the latter, was objected to on the ground that it attempts to vary the terms of the respective deeds by parol agreements alleged to have been made during the period of negotiations and not incorporated in the deeds. The court received the evidence conditionally, reserving the question raised by the objection for determination along with the merits. The final ruling on the question is contained in findings of fact No. 4, which is as follows:

"That no contract was made or entered into to establish a boundary line by agreement or to place any such line on the ground, all testimony in this connection introduced by defendants Weisbrod being at or prior to the execution of each deed concerned between the parties to that deed and hence inadmissible to vary the terms of such deed."

This ruling is assigned as error. The defendants contend the description in the deed leaves the true location of the north boundary uncertain and doubtful, and that the evidence as to the location agreed upon between the parties is permissible to remove that doubt. On the other hand, plaintiffs' position is that the description is not uncertain; that the location of the line on the ground can be definitely established from the description given; and that, therefore, such evidence is incompetent.

In the absence of uncertainty, ambiguity or mistake, the description in a deed cannot be so amplified or varied. We, therefore, first determine whether the description here considered is sufficiently definite to require the exclusion of this evidence. In the first place, the starting point is uncertain in that the "intersection" referred to is not defined. That is, it is not stated with what "the middle of the north and south highway" intersects as "it crosses the Little Salmon River". However, we may assume that this intersection is further limited by the phrase "thence northerly following the middle of the channel," and, so assuming, conclude that the "intersection" is of the middle line of the highway with the middle line of the river channel. The defendants make no particular point of this element of uncertainty. But, we call attention to it because the surveyor who prepared the plat testified that he started his survey from the middle of the highway at the middle of the bridge; that he measured the length of the bridge and, finding its midpoint, established his starting point there on the middle line of the highway, without determining, apparently just assuming, that the middle of the bridge was directly over the middle of the channel, a conclusion which does not necessarily follow. Moreover, an examination of the plat indicates that if

it is accurate as to the relative location of the intersecting channel and highway, the starting point accepted by the surveyor is not in the middle of the channel, but would be somewhat farther south along the center line of the highway.

We next note that the distances both down the middle of the channel and along the highway are "approximately 759 feet." The word "approximately" indicates that the parties had not definitely established the exact distances and that allowance was to be made for comparatively small departures from the distances given. However, physical features existing upon the ground and referred to in the description must be considered also. Weniger v. Ripley, 134 Or. 265, 293 P. 425; Mello v. Weaver, 36 Cal.2d 456, 224 P.2d 691.

The first call is the middle of the channel of the river. The evidence shows that in 1946 and 1947, when the deeds to Austins and Campbells were executed, the channel of the river curved to the west as it passed this property going north down stream from the bridge. In 1948 or 1949 this channel was considerably straightened by spring flood waters carrying away the shore land along the west side of the Campbell, Weisbrod, and Ross properties. So that, in 1950, when the survey was made, a line down the middle of the channel, thus straightened, for a distance of 759 feet would reach a point farther north than would a line of the same length extending down the middle of the curved channel as

it existed when these deeds were given. It is plaintiffs' position that the description is not uncertain; that is, that the middle line of the channel as described in the deed could be definitely located on the ground and measured; yet they made no effort to do so. There is no evidence as to where the channel was in 1947, except that it was farther west than when the survey was made. The surveyor made no attempt to locate it. His reason was that "the channel has changed from what it was"; "it was altogether changed"; "it washed out all this land". In fact, the surveyor made no effort to locate or measure along the middle line of the channel as it existed at the time of his survey. On the contrary, he testified that from the starting point (assumed by him) he measured 759 feet along the east bank of the river and there established plaintiffs' northwest corner. This was contrary to the call of the deed and obviously located the corner farther north than the call permits. Woodland v. Hodson, 28 Idaho 45, 152 P. 205; Hagerman v. Thompson, 68 Wyo. 515, 235 P.2d 750. While a boundary line consisting of a stream will ordinarily shift with the accretion and decrement caused by the water, such shifting cannot alter any other boundary of the property not thus riparian. The straightening of the channel did not move plaintiffs' northern boundary farther north. Hirt v. Entus, 37 Wash.2d 418, 224 P.2d 620; Asheville Land Co. v. Lang, 146 N.C. 311, 59 S.E. 703; 11 C.J.S., Boundaries, §. 34.

Plaintiffs contend that, since the highway has remained constant, by reversing the calls in the deed the north line is definitely located by measuring along the highway. The possibility of error in the accepted starting point affects this call also. This, together with the use of the word "approximately", precludes such certainty as would be required to overcome the uncertainty inherent in the first call.

The evidence of the marking, agreeing upon, and acquiescence in, the established boundary, is competent and should have been considered. Price v. De Reyes, 161 Cal. 484, 119 P. 893; Cummings v. Laughlin, 173 Cal. 561, 160 P. 833; Schlender v. Maretoli, 140 Kan. 533, 37 P.2d 993; Baker v. Jones, 141 Kan. 240, 40 P.2d 346; Windsor v. Bourcier, 21 Wash. 2d 313, 150 P.2d 717; Hirt v. Entus, supra.

The fundamental principle underlying all of the rules of construction of deeds, as well as all other contractual instruments, is that the courts must seek and give effect to the intention of the parties. Schmidt v. Williams, 34 Idaho 723, 203 P. 1075; Molyneux v. Twin Falls Canal Co., 54 Idaho 619, 35 P.2d 651, 94 A.L.R. 1264; McLean v. Row, 56 Idaho 646, 57 P.2d 689; Mammoth Gold Dredging Co. v. Forbes, 39 Cal.App.2d 739, 104 P.2d 131; Losee v. Jones, Utah, 235 P.2d 132. The general rule is that monuments, natural or artificial, or lines marked on the ground, control over calls for courses and distances. Blaffer v. State, Tex.Civ.App., 31 S.W.2d

172; Carter v. Texas Co., 1935, 126 Tex. 388, 87 S.W.2d 1079; Snyder v. Magnolia Petroleum Co., Tex.Civ.App., 107 S.W.2d 603; Crosbyton-South Plains Ry. Co. v. Hutchinson, Tex.Civ.App., 204 S.W.2d 643; Dean v. Thompson, Tex.Civ.App., 213 S.W. 2d 327; Conner v. Jarrett, 120 W.Va. 633, 200 S.E. 39; Klapman v. Hook, 206 S.C. 51, 32 S.E.2d 882; Neill v. Ward, 103 Vt. 117, 153 A. 219; Richards & Richards v. Stewart, 102 Pa.Super. 488, 157 A. 331; 8 Am.Jur., Boundaries, §§ 53, 54, 55. The particular rule applicable here is that where the seller and the buyer go upon the land and there agree upon and mark the boundary between the part to be conveyed and the part to be retained by the seller, the line thus fixed controls the courses and distances set out in the deed executed to effectuate the division agreed upon. Martin v. Lopes, 28 Cal.2d 618, 170 P.2d 881; Lake, for Use and Benefit of Benton v. Crosser, 202 Okl. 582, 216 P.2d 583; Nebel v. Guyer, 99 Cal.App.2d 30, 221 P.2d 337; Millikin v. Sessoms, 173 N.C. 723, 92 S.E. 359; 170 A.L.R., note, 1144. In S. S. M. Realty Co. v. Boren, 211 N.C. 446, 190 S.E. 733, it was held that a boundary line, established by tenants in common going upon the premises and marking the dividing line and making deeds intending to divide the property along the line thus marked and agreed upon, controls over the courses and distances set out in the deeds; and that by so doing and thereafter dealing with the land with reference to the line thus established they estop themselves

and their privies from thereafter claiming a different line under the calls in the deeds.

■■■ It is without dispute that a line was agreed upon and marked on the ground, by and as between Weisbrods and Austins. As stated, Campbell denied knowledge of this agreement, and denied the line was pointed out to him. However, he testified that when he bought the property the "house" was occupied by Weisbrods as their home, and that they continued to occupy it to the time of trial so far as he knew. It is unreasonable to suppose that plaintiffs thought they were buying that house, or that the description in their deed included the land on which it stood. To say the least, they were put on notice of a conflicting occupancy and claim of ownership. They knew that their deed called for a distance of 759 feet down the middle of the channel of the river, which neither they nor their agent, the surveyor, had measured or attempted to measure. They made no claim to the disputed area until they filed this action. Thus they acquiesced in the established boundary from 1947 to 1951. Under these circumstances plaintiffs should be and they are bound to accept the line as marked and agreed upon between Weisbrods and Austins. Idaho Land Co. v. Parsons, 3 Idaho, Hasb., 450, 31 P. 791; Fleming v. Baker, 12 Idaho 346, 85 P. 1092; Taylor v. Reising, 13 Idaho 226, 89 P. 943; Zehner v. Castle, 27 Idaho 215, 148 P. 470; Mulder v. Stands, 71 Idaho 22, 225 P.2d 463; Patterson v. Meyer, 28 Okl. 304, 114 P. 256; Silva v. Azevedo, 178 Cal. 495, 173 P. 929; Booth v. Stow, 38 Cal.App. 191, 175 P. 705; Shafer v. Leigh, 112 Kan. 14, 209 P. 830; Leggett v. Olson, Nev., 210 P.2d 648; Crook v. Leinenweaver, 100 Cal.App. 2d 790, 224 P.2d 891; Carr v. Schomberg, 104 Cal.App.2d 850, 232 P.2d 597; Ekberg v. Bates, Utah, 239 P.2d 205; 69 A.L.R. note 1430, 113 A.L.R. note 421; 11 C.J.S., Boundaries, § 69b, page 644. The burden was on plaintiffs to establish their title to the disputed parcel. This they failed to do.

The decree is reversed and the cause remanded with directions to enter judgment for appellants. Costs to appellants.

GIVENS, C. J., and PORTER, THOMAS and KEETON, JJ., concur.