94 P.3d 694

Sandra REID, as Conservator of the Person and Estate of Cory L. Snyder, a protected person, Plaintiff–Appellant,

v.

Philip DUZET and Barbara Duzet, husband and wife, and the following described real property; a parcel of land on the South half of the Northeast quarter of Section 3, Township 49 North, Range 4 West, Boise Meridian, Kootenai County, State of Idaho, described as follows; commencing at the East quarter corner of said Section 3; thence North along the East line of said Section, 200 feet; thence West, parallel to the East–West center line of said Section, 600 feet, thence North 200 feet to the True Point of Beginning; thence continuing North to the South edge of Kidd Island Bay Road; thence West along said road, to a point 60 feet East of the Southwest corner of Tax No. 7522; thence South parallel to the North–South center line of said Section to a point 200 feet North of the East–West center line of said section; thence East to the Southwest corner of Tax No. 11557; thence North 200 feet; thence East 400 feet to the True Point of Beginning, Defendants–Respondents,

and

John and Jane Does I through 100; and all other persons claiming any interest in the described real property, Defendants.

No. 29161.

Supreme Court of Idaho,
Boise, April 2004 Term.

July 1, 2004.

Vasseur & Schlotthauer, PLLC, Coeur d' Alene, for appellant. Brent G. Schlotthauer argued.

Owen, James, Vernon & Weeks, P.A., Coeur d' Alene, for respondents. Susan P. Weeks argued.

TROUT, Chief Justice.

Appellant Sandra Reid appeals the district court's amended findings and decision following a bench trial. In that decision, the district judge declined to quiet title to certain real property in Kootenai County owned by Respondents Philip and Barbara Duzet (the Duzets). Reid contends the findings of fact do not properly and adequately support the conclusion that the prior owners of the property in question had established the actual location of the boundary line between their properties as a boundary by agreement. We affirm the district judge's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In May 1979, Wilfred Vedder and Michael Caldero negotiated an oral agreement transferring a portion of Vedder's property to Caldero in exchange for a well and water rights owned by Caldero. Because of the odd shape of the property transferred to Caldero, this portion of land is referred to as the "top hat" property. In contemplation of the land transfer, Vedder and Caldero visually marked the agreed boundary of the property to be exchanged with rock piles and wooden stakes. When the legal description of the top hat property was drafted by Vedder, the description in the deed did not match the boundaries as agreed to by Vedder and Caldero, and a large portion of the property visually marked as belonging to Caldero was described in the deed as belonging to Vedder. Neither party had a survey performed to ensure the property description matched the agreed boundaries. Thereafter, the Vedder property passed to Janice Magnusen and then to Reid. Caldero sold the top hat property and, after several intervening owners, it ended up in the hands of the Duzets.

After she purchased the property in 1999, Reid had a survey performed and at that time discovered the discrepancy between the deed description and the boundaries as agreed upon by Vedder and Caldero. Reid subsequently brought this action against the Duzets to quiet title to the property in question, according to the legal description set forth in her deed.

After a court trial, the district judge ultimately entered amended findings of fact and an amended judgment, determining that Vedder and Caldero had established a definite boundary through landmarks visible to all parties and therefore, a boundary by agreement was created. Thus, the landmarks as established by Vedder and Caldero controlled and Reid was not entitled to quiet title to the land in question. Reid filed a timely appeal.

## II. STANDARD OF REVIEW

■■■ This Court will only set aside a trial court's findings of fact if they are clearly erroneous. I.R.C.P. 52(a). In deciding whether findings of fact are clearly erroneous, this Court determines whether the findings are supported by substantial, competent evidence. Evidence is substantial if a reasonable trier of fact would accept it and rely on it. Findings based on substantial, competent evidence, although conflicting, will not be disturbed on appeal.

This Court exercises free review over conclusions of law.

*Neider v. Shaw,* 138 Idaho 503, 506, 65 P.3d 525, 528 (2003) (citations omitted).

## III. DISCUSSION

Reid argues on appeal that the district judge improperly relied on the theory of boundary by agreement to resolve this dispute, asserting that the facts here do not support such a legal conclusion. Reid contends that Vedder and Caldero established an oral boundary prior to any dispute as to where the boundaries actually were and, because there was never a dispute between them, this case does not meet the requirements for a boundary by agreement.

■■■ Idaho case law is well established on the elements necessary for a boundary by agreement. "Boundary by agreement requires: (1) an uncertain or disputed boundary involving adjacent properties, and (2) an agreement fixing the boundary." *Neider v. Shaw,* 138 Idaho 503, 506, 65 P.3d 525, 528 (2003). Under this doctrine, these two requirements are set out in a specific order;

namely, there must be an uncertain or disputed boundary first, and then a subsequent agreement fixing the boundary. *See Cox v. Clanton,* 137 Idaho 492, 493, 50 P.3d 987, 990 (2002); *Baxter v. Craney,* 135 Idaho 166, 172, 16 P.3d 263, 269 (2000); *Johnson v. Newport,* 131 Idaho 521, 522, 960 P.2d 742, 743 (1998); *Cameron v. Neal,* 130 Idaho 898, 901, 950 P.2d 1237, 1240 (1997); *Wells v. Williamson,* 118 Idaho 37, 41, 794 P.2d 626, 630 (1990). One boundary by agreement case held that any oral agreement as to a boundary between two adjacent properties is valid only if there is a dispute or uncertainty as to the boundary at the time of the agreement and, absent such a dispute or uncertainty, such an oral agreement is a conveyance of land in violation of the statute of frauds. *Kunkle v. Clinkingbeard,* 66 Idaho 493, 497, 162 P.2d 892, 894 (1945).

■ Here, Vedder and Caldero established the boundaries of the property Caldero was acquiring from Vedder before any actual transfer was made. After they had agreed upon the boundaries of the land to be traded to Caldero, Vedder subsequently drew up a deed in which he inadvertently used a legal description of the property that inaccurately reflected the boundaries upon which the two had agreed. Because neither of the parties had a survey performed to verify the accuracy of the deed's legal description, neither Vedder or Caldero, nor their successors in interest, knew that the legal description did not reflect the boundaries as agreed to by Vedder and Caldero until Reid had her survey performed. Consequently, there was no uncertainty as to where the actual boundaries were between Vedder and Caldero at the time they established them because the property in question belonged to Vedder and had not yet been traded to Caldero. As a result Vedder and Caldero cannot be said to have resolved an uncertain boundary by their agreement—they were simply marking part of Vedder's property to be traded to Caldero. Consequently, the district judge erred in relying on the doctrine of boundary by agreement.

■ Reid argues on appeal that not only is this not a boundary by agreement case, the attempt by Vedder to transfer the property to Caldero by an oral agreement is a violation of the statute of frauds. This is also an improper characterization of the facts. While Vedder and Caldero did orally agree to the boundaries, their oral agreement was not meant to be the sole memorial of the real property transaction. Subsequent to the agreement, Vedder then drafted a written deed to effectuate the transaction, though this deed contained an inaccurate description of the top hat property boundaries.

■ "Where an order of a lower court is correct, but based upon an erroneous theory, the order will be affirmed upon the correct theory." *Andre v. Morrow,* 106 Idaho 455, 459, 680 P.2d 1355, 1359 (1984). Thus, while we do not agree that the doctrine of boundary by agreement applies, nevertheless, there is a theory upon which the district judge's ruling may be upheld.

The record is clear that Vedder, Caldero, and all of the successors in interest to the Caldero property, accepted this deed as reflecting the agreed upon boundaries and relied upon that deed accordingly. The record also demonstrates that all of these successors in interest to the Caldero property knew with reasonable accuracy where the boundaries of the property were as originally agreed. As to the Vedder portion of the property, Vedder's son explained the orally agreed upon boundaries to Magnusen at the time she purchased it. James Zoellin, a successor to the Caldero property contemporaneous to Magnusen, also explained the approximate boundaries to Magnusen. However, when Reid purchased the property from Magnusen, Magnusen could not explain to her where the boundaries of the property were; only that there were some rock piles, but said she didn't know where the boundary line was located. Because there was snow on the ground when Reid purchased the property, she did not walk the property with Magnusen to see these rock piles or to investigate where the boundaries might be.

Reid claims she had no notice of the agreement between Vedder and Caldero and therefore, cannot be bound by it. While it is clear from the record that Reid did not have knowledge of the Vedder–Caldero agreement

as to the boundaries, the district judge did find that Reid had notice as to the structures the Duzets owned which were on land designated as Reid's according to the surveyed boundaries. The district judge found:

> Although the Plaintiff was unaware of any marked property boundaries, choosing instead to rely on the deeded description, even a casual observation of the parcel would have revealed improvements in the area of the top hat. Those improvements, i.e., fencing, pens, wood shed, driveway, garage, and a home immediately east of the iron rod should have put them on notice that someone claimed an interest in this property, regardless of what the survey later revealed.

This Court held in *Campbell v. Weisbrod,* 73 Idaho 82, 245 P.2d 1052 (1952), that:

> Where the seller and the buyer go upon the land and there agree upon and mark the boundary between the part to be conveyed and the part to be retained by the seller, the line thus fixed controls the courses and distances set out in the deed executed to effectuate the division agreed upon.

73 Idaho at 89, 245 P.2d at 1057. And, as we further ruled in *Paurley v. Harris,* 75 Idaho 112, 268 P.2d 351 (1954), "such an agreed boundary would also be binding upon a successor in interest of the seller, who purchased with notice of the agreement." 75 Idaho at 117, 268 P.2d at 353.

In *Paurley,* the plaintiffs, seeking to quiet title according to the metes and bounds description in the deed, claimed they had no knowledge of an agreement concerning the boundaries of the property sold to the defendants by the original owner of plaintiffs' property. However, this Court found:

> The boundary, which defendants claim, was clearly marked by 'a tight board fence', four or five feet in height, and the area on defendants' side of the fence was planted to lawn, shrubbery and trees. This would constitute notice to an intending purchaser, of defendants' possession. One buying property in the possession of a third party is put on notice of any claim of title or right of possession by such third party, which a reasonable investigation would reveal.

73 Idaho at 117, 268 P.2d at 353. In *Campbell,* the property in question was originally owned by the Weisbrods. They reached an agreement with the Austins as to where their respective property boundary should be at the time they sold a portion of their property to the Austins, but the deed prepared at the time did not accurately reflect their agreement. Their agreement was that the boundary line would be approximately twenty feet south of a house located on Weisbrods' parcel of property. The Campbells subsequently purchased the property from the Austins and claimed no knowledge of the agreement between the Weisbrods and the Austins and further claimed the property line was to the north of the house, so their property included the Weisbrods' house. This Court held:

> It is without dispute that a line was agreed upon and marked on the ground, by and as between Weisbrods and Austins. As stated, Campbell denied knowledge of this agreement, and denied the line was pointed out to him. However, he testified that when he bought the property the 'house' was occupied by Weisbrods as their home, and that they continued to occupy it to the time of trial so far as he knew. It is unreasonable to suppose that plaintiffs [the Campbells] thought they were buying that house, or that the description in their deed included the land on which it stood. To say the least, they were put on notice of a conflicting occupancy and claim of ownership.

73 Idaho at 90, 245 P.2d at 1057. As the district judge found, Reid knew or should have known that there existed structures upon the portion of the top hat area in dispute. Just as in the *Campbell* case, she could not have reasonably assumed she was purchasing either the structures or improvements, or the land on which they were situate. Though she did not know of the agreement between Vedder and Caldero as to the boundaries of the property she was purchasing, she did have notice that someone else claimed the disputed top hat property.

■ We have ruled: "In construing a deed the court should seek and, if possible, give effect to the intention of the parties."

**394**

Gardner v. Fliegel, 92 Idaho 767, 770, 450 P.2d 990, 993 (1969). There was sufficient evidence in the record to establish that the intent of Vedder and Caldero was to transfer to Caldero the top hat property, delineated by the boundaries agreed to by the two men and not according to the subsequent mistaken deed description. We agree with Reid that this case is not properly characterized as a boundary by agreement case. However, Idaho law provides that when two parties orally establish boundaries of property to be transferred from one to the other, and the subsequent written deed does not match those boundaries, the orally agreed upon boundaries will prevail. This oral agreement is binding upon all subsequent purchasers who have notice of the agreement, or who are put on notice at the time of purchase that the property as described by the inaccurate deed is claimed by someone other than the seller.

We uphold the district judge's decision because the result reached was correct. Because Reid does not dispute the actual location of the boundaries to the top hat property as determined by the district judge according to the testimony and evidence produced at trial, we uphold that determination as set forth in the amended findings and conclusions.

## IV. CONCLUSION

We uphold the district judge's decision declining to quiet title in Reid and legally establishing the boundaries of the Duzets' property according to the original agreement between Vedder and Caldero as determined by the amended findings and conclusions. The orally agreed upon boundaries between Vedder and Caldero prevail over the subsequent mistaken deed description, where Reid had notice that the disputed portion of the top hat property was claimed by the Duzets at the time she purchased it. We award costs on appeal to the Duzets.

Justices SCHROEDER, KIDWELL, EISMANN and BURDICK concur.