IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 44864

GLEN WAYNE NIELSON and CHERYL E. NIELSON, husband and wife,

    Plaintiffs-Appellants,

v.

ROBERT TALBOT and MICHELE TALBOT, husband and wife; PAUL PARKER and SAUNDRA PARKER, husband and wife,

    Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, January 2018 Term

2018 Opinion No. 29

Filed: April 4, 2018

Karel A. Lehrman, Clerk

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Franklin County. Hon. Robert C. Naftz, District Judge.

The district court's judgment is affirmed in part, vacated in part, and remanded. Costs on appeal are awarded to Talbots.

Atkin Law Offices, PC, Clifton, for Appellants. Blake S. Atkin argued.

Racine, Olson, Nye & Budge, Pocatello, for Respondents. Lane V. Erickson argued.

BEVAN, Justice.

## I. NATURE OF THE CASE

This is a property line dispute. Appellants, Glen and Cheryl Nielson (the "Nielsons"), challenge a district court's grant of summary judgment in favor of Respondents, Robert and Michele Talbot (the "Talbots") and Paul and Saundra Parker (the "Parkers"). The Parkers and Talbots were neighbors. The Parkers sold their property to the Nielsons by warranty deed. Shortly after purchasing the property, the Nielsons filed a complaint against the Talbots arguing that, according to the legal description in the warranty deed, the Talbots' shed, carport, and driveway extended over the property line and onto the Nielsons' property. The Nielsons

1

also filed a complaint against the Parkers arguing that the Parkers were obligated to defend the title of the property that they had sold. The two cases were consolidated and the district court granted summary judgment in favor of the Talbots and the Parkers. We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 1979, Craig and Sue Shaffer (the "Shaffers") purchased a large parcel of land that they subsequently divided into two pieces: one containing a pasture that was enclosed by a fence (the "Talbot Property"), and a second that contained the remaining property (the "Nielson Property").

### a. Factual Background of the Talbot Property

In 1985, the Shaffers sold the fenced pasture to the Murdocks. At the time of the sale, the Shaffers and the Murdocks agreed that the fence line was the property line. A legal description of the land sold to the Murdocks was included in the deed, and both parties believed that the legal description reflected their agreement that the fence line was the property line.

In 1992, the Murdocks sold the property to the Whiteheads, who were home builders. The Murdocks informed the Whiteheads that the fence line was the property line. The Whiteheads owned the property for approximately six months during which time they built a house on the land. The fence was taken down sometime during the Whiteheads' ownership of the Talbot Property.

In 1993, the Whiteheads sold the property to the Larsens. The same legal description that was in the deed from Shaffers to Murdocks was included in the deed, which the Larsens believed reflected the property line between their property and what is now referred to as the Nielson Property. At the time of the sale, the Talbot Property was bare dirt except for the house. Conversely, the Nielson Property, which was owned by the Cromwells at the time, was landscaped with grass and lilac bushes. Mr. Larsen discussed his intention to landscape the Talbot Property with Mr. Cromwell, and the two men agreed that Mr. Larsen would landscape the Talbot Property up to the property line, which the men believed was established by Mr. Cromwell's landscaping, i.e., groomed grass and lilac bushes. Thereafter, Mr. Larsen installed a sprinkler system and planted and maintained grass up to the lilac bushes. The Cromwells and the Larsens maintained their yards under the belief that the lilac bushes established the

property line. Sometime later, Mr. Larsen built a shed on the back corner of his property. Mr. Larsen built the shed so that the back side of it was on what he believed to be the property line.

In 1995, the Larsens sold their property to the Talbots. Mr. Larsen testified that, at the time he sold the property to the Talbots, the property line between the Talbot Property and the Nielson Property, which was still owned by the Cromwells, was "well defined by lilac bushes, grass, yards, sprinkler system, and shed that existed on either our property or the Cromwell property." After purchasing the Talbot Property, the Talbots spoke with Mr. Cromwell about their desire to build a carport and driveway on their property, which would border the property line. The two parties discussed the appearance of the carport and agreed that it would border the property line, i.e., the lilac bushes. Mr. Talbot testified that "[f]rom the time we moved onto our property and after installing the driveway and carport, the boundary line that existed continued to be well defined by the lilac bushes, grass, sprinkler system, shed, driveway and carport that existed on either our property or the Cromwell's [sic] property. . . . We were neighbors with the Cromwells for nearly 10 years. During all of this time the boundary line that existed between our property and the Cromwell's [sic] property was always the same and was defined by the lilacs, grass, yards, sprinkler system, shed, driveway and carport."

b. *Factual Background of the Nielson Property*

In 1986, the Shaffers sold the property that they had retained (i.e., the Nielson Property) to Beneficial Life Mortgage Company. Approximately three months later, Beneficial Life Mortgage Company sold the property to the Cromwells. A legal description was included in the deed, which the Cromwells believed reflected the fence line as the property line between the Nielson Property and the Talbot Property. At the time the Cromwells purchased their property, the Talbot Property was still a fenced pasture owned by the Murdocks. Immediately after purchasing the property, the Cromwells began maintaining grass up to the fence line. Additionally, Mr. Cromwell planted several lilac bushes along the fence to create a natural privacy barrier. Mr. Cromwell testified that Mr. Whitehead took the fence down in 1992. Mr. Cromwell testified that, although he did not have any discussions about the property line with the Whiteheads, the lilac bushes and maintained yard established a clear property line. The Cromwells owned the Nielson Property for approximately eighteen years during which time the Talbot Property was owned by the Murdocks, the Whiteheads, the Larsens, or the Talbots. Mr. Cromwell testified that while he owned the Nielson Property,

3

[T]he boundary line that existed between our property and the Talbot's [sic] property was always the same and was defined by the fence, or once it was removed, by the lilacs, grass, yards, sprinkler system, shed, driveway and carport. Every neighbor . . . that lived on the Talbot property . . . agreed to the boundary line through their maintenance of the boundary line. There was never any dispute about the boundary line between the properties.

In 2004, the Cromwells sold the Nielson Property to the Heaps. The Heaps believed that the lilac bushes and the carport marked the property line. In 2006, the Heaps sold the Nielson Property to the Parkers. The Parkers believed that the property line was marked by the lilac bushes and the carport. The Parkers owned the Nielson Property for approximately seven years. In 2013, the Parkers sold the Nielson Property to the Nielsons.

### c. Factual Background of the Dispute

Shortly after purchasing their property, Mr. Nielson measured his lot according to the legal description in the deed and discovered for the first time that the Talbots' carport encroached upon his property by approximately thirteen feet. Mr. Nielson believed that the lilac bushes were planted to cover the carport and did not indicate a property line. Mrs. Nielson stated that when they purchased the property there was nothing on the ground that appeared to be a property line. Mrs. Nielson testified that before they purchased the property, there was no way that they could have discovered that the Talbots had encroached upon their property.

Shortly after the Nielsons moved in, Mrs. Nielson tore out all of the lilacs, shrubs, and plants that had been maintained as the property line. Mrs. Talbot testified that she was harassed by Mrs. Nielson about the location of the carport and shed. Mr. Talbot testified that the property line was not disputed until the Nielsons purchased the neighboring property.

### d. Procedural Background

On March 23, 2015, the Nielsons filed a complaint against the Talbots for quiet title and injunctive relief. The Nielsons requested, *inter alia*, that: (1) the district court quiet title in their favor according to the legal description of their property in the deed; and (2) the district court enjoin the Talbots from continuing to encroach upon the Nielson Property. The Talbots filed an answer and counterclaim, alleging that the lilac bushes represented the property line that was relied upon by previous owners for decades and became a boundary by agreement as provided by Idaho law. The Talbots requested that the district court quiet title in their favor according to the boundary by agreement.

4

Subsequently, the Talbots filed a motion for summary judgment, asserting that they were entitled to quiet title because the previous owners had agreed that the property line was established by the fence, lilac bushes, lawns, sprinkler system, carport, and shed. The Nielsons opposed the Talbots' motion for summary judgment and argued that there were disputed material facts that precluded summary judgment.

In March 2016, the Nielsons filed a motion to disqualify the Talbots' counsel due to an irreconcilable conflict of interest. Specifically, the Nielsons argued that the attorney should not be able to represent both the Talbots and the Parkers because the parties were directly adverse to one another due to the Parkers' duty to defend the Nielsons' title. The district court denied the Nielsons' motion and consolidated the Nielsons' actions against the Talbots and the Parkers.

In August 2016, the Talbots and Parkers filed an amended motion for summary judgment wherein they requested that the district court dismiss the Nielsons' claim that the Parkers were obligated to defend title. The Nielsons filed a cross motion for summary judgment wherein they claimed that they were entitled to judgment against the Parkers for breach of warranty of title.

On October 12, 2016, the district court issued a memorandum decision and order on the Talbots' and the Parkers' motion for summary judgment. The district court noted that it was undisputed that all of the previous owners had honored the property line agreed upon by the Shaffers and the Murdocks, first through the fence, then through the planting of the lilac bushes, the maintenance of the yards, the placement of the shed, the installation of the sprinkler system, and the construction of the driveway and carport. The district court concluded that there was no question that the Nielsons were put on notice of the previously agreed upon boundary. Accordingly, the district court granted summary judgment in favor of the Parkers and the Talbots and quieted title in favor of the Talbots. A corresponding judgment was entered on the same day.

The Nielsons filed a motion for new trial or to alter or amend judgment. The Nielsons argued that they were entitled to judgment against the Parkers for breach of warranty and the amount of damages resulting from that breach, plus attorney fees incurred. The district court denied the Nielsons' motion after concluding that the warranty deed had been altered due to the

agreement of the previous owners; therefore, the warranty deed could not be the basis of any claim for breach of warranty and/or duty to defend. The Nielsons timely appealed.

### III. ISSUES ON APPEAL

1. Whether the district court erred in granting summary judgment in the Talbots' favor regarding the property line dispute.

2. Whether the district court erred in dismissing the Nielsons' claim for breach of warranty.

3. Whether the district court erred in failing to disqualify the Talbots' and Parkers' counsel.

4. Whether any party is entitled to attorney fees on appeal.

### IV. STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment under the same standard employed by the district court. *Boise Tower Assocs. v. Hogland*, 147 Idaho 774, 779, 215 P.3d 494, 499 (2009). "The fact that the parties have filed cross-motions for summary judgment does not change the applicable standard of review, and this Court must evaluate each party's motion on its own merits." *Intermountain Forest Mgmt., Inc. v. La. Pac. Corp.*, 136 Idaho 233, 235, 31 P.3d 921, 923 (2001). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Idaho R. Civ. P. 56(c). Because the case proceeds as a de novo bench trial in front of the district court, the district court, as the trier of fact, "is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences." *P.O. Ventures, Inc. v. Loucks Family Irrev. Trust*, 144 Idaho 233, 237, 159 P.3d 870, 874 (2007). This Court freely reviews the entire record that was before the district court to determine whether either side was entitled to judgment as a matter of law and whether the inferences drawn by the district court are reasonably supported by the record. *Id*.

*Gracie, LLC v. Idaho State Tax Comm'n*, 149 Idaho 570, 572, 237 P.3d 1196, 1198 (2010).

### V. ANALYSIS

**A.** **The district court did not err in granting summary judgment in the Talbots' favor regarding the property line dispute.**

The Nielsons' argument on appeal is twofold. First, the Nielsons assert that the Talbots cannot prevail on a boundary by acquiescence claim because such a claim requires a showing of a disputed property line, which is absent. We decline to address this argument because it is not the theory that the Talbots argued, nor is it the theory upon which the district court relied.

6

Second, the Nielsons argue that they were not notified of the altered property line because the carport and shed were not substantial enough to demonstrate the altered property line.

"The fundamental principle underlying all of the rules of construction of deeds, as well as all other contractual instruments, is that the courts must seek and give effect to the intention of the parties. . . . The general rule is that monuments, natural or artificial, or lines marked on the ground, control over calls for courses and distances." *Campbell v. Weisbrod,* 73 Idaho 82, 89, 245 P.2d 1052, 1057 (1952) (internal citations omitted).

In *Campbell v. Weisbrod*, this Court addressed a property line dispute similar to the issue at hand, i.e., whether a property line is established by a legal description when the predecessors-in-interest agreed otherwise. 73 Idaho 82, 245 P.2d 1052. The Weisbrods owned a single parcel but conveyed part of it to the Austins, with an oral agreement that the property line would be a certain distance from the Weisbrods' house; however, the legal description of the property indicated that the Weisbrods' house was on the Austins' property. *Id*. at 85–86, 245 P.2d at 1054–55. Sometime later, the Austins conveyed their property to the Campbells, who discovered that, according to the legal description in the deed, they owned the property upon which the Weisbrods' house sat. *Id.* The district court quieted title in the Campbells' favor, but this Court reversed and remanded the judgment, finding:

> It is without dispute that a line was agreed upon and marked on the ground, by and as between Weisbrods and Austins. As stated, Campbell denied knowledge of this agreement, and denied the line was pointed out to him. However, he testified that when he bought the property the 'house' was occupied by Weisbrods as their home, and that they continued to occupy it to the time of trial so far as he knew. It is unreasonable to suppose that plaintiffs thought they were buying that house, or that the description in their deed included the land on which it stood. To say the least, they were put on notice of a conflicting occupancy and claim of ownership. . . . Under these circumstances plaintiffs should be and they are bound to accept the line as marked and agreed upon between Weisbrods and Austins.

*Id.* at 90, 245 P.2d at 1057–58.

This ruling was extended in *Paurley v. Harris*, where this Court held:

> As indicated in *Campbell v. Weisbrod*, *supra*, such an agreed boundary would also be binding upon a successor in interest of the seller, who purchased with notice of the agreement. The boundary, which defendants claim, was clearly marked by "a tight board fence", four or five feet in height, and the area on defendants' side of the fence was planted to lawn, shrubbery and trees. This would constitute notice to an intending purchaser, of defendants' possession.

7

> One buying property in the possession of a third party is put on notice of any claim of title or right of possession by such third party, which a reasonable investigation would reveal.

75 Idaho 112, 117, 268 P.2d 351, 353 (1954). Because the successors-in-interest testified that they saw the fence, this Court held that it was sufficiently established that the successors-in-interest were not "innocent purchasers." *Id.* at 118, 268 P.2d at 354.

In *Reid v. Duzet*, this Court clarified what constitutes notice to a purchaser when a property line does not comport with the legal description in a deed. 140 Idaho 389, 94 P.3d 694 (2004). The plaintiff, Reid, submitted an argument similar to the Nielsons, i.e., that she was entitled to property according to the legal description in the deed. *Id.* at 391, 94 P.3d at 696. However, the district court ruled in the defendants' favor after finding that the previous owners had orally agreed to a different property line. *Id.* The district court held that even though Reid had no knowledge of the previous owners' agreement, Reid had notice of structures on the ground, i.e., the shed, fence, driveway, and garage, that were owned by a neighbor but on the land designated as Reid's in the deed. *Id*. at 392–93, 94 P.3d at 697–98. On appeal, this Court affirmed the district court, holding that

> Idaho law provides that when two parties orally establish boundaries of property to be transferred from one to the other, and the subsequent written deed does not match those boundaries, the orally agreed upon boundaries will prevail. This oral agreement is binding upon all subsequent purchasers who have notice of the agreement, or who are put on notice at the time of purchase that the property as described by the inaccurate deed is claimed by someone other than the seller.

*Id.* at 394, 94 P.3d at 699.

We hold that the district court did not err in granting summary judgment in favor of the Talbots regarding the property line dispute. The evidence is undisputed that the Shaffers and Murdocks intended the fence, which was later replaced by the lilacs, carport, and shed, to be the property line. Further, the previous owners, i.e., the Shaffers, Murdocks, Cromwells, Larsens, Talbots, Heaps, and Parkers, provide substantial testimony in the record that they all maintained the property line that had been established by the Shaffers and Murdocks. Similar to *Reid*, the discrepancy between the legal description and the oral agreement was not discovered until the Nielsons purchased the property. 140 Idaho at 391, 94 P.3d at 696. However, it is undisputed that, at the time the Nielsons purchased the property, the lilac bushes, carport, and shed existed and demonstrated the property line. Further, it would be

unreasonable for the Nielsons to assume that they were purchasing part of the Talbots' carport and shed. As a result, we hold that the district court did not err in granting summary judgment to the Talbots because it was undisputed that the Shaffers and Murdocks orally agreed upon the altered property line, and the monuments on the ground, i.e., the carport, shed, and lilac bushes, provided the Nielsons with notice of the altered property line.

However, an issue remains regarding the sufficiency of the judgment entered by the district court. After granting summary judgment in favor of the Talbots, the district court ordered the Talbots to prepare an appropriate decree establishing a new and accurate legal description for both the Nielson Property and the Talbot Property. However, the Talbots failed to follow this instruction. As a result, we remand the case so that the district court may enter a proper judgment that sufficiently describes the altered property line. *See Kosanke v. Kopp*, 74 Idaho 302, 307, 261 P.2d 815, 818 (1953) ("A judgment which affects the title or interest in real property must describe the lands specifically and with such certainty that the court's mandate in connection therewith may be executed, and such that rights and liabilities are clearly fixed and that all parties affected thereby may readily understand and comply with the requirements thereof.").

**B.      The district court erred by dismissing the Nielsons' claim for breach of warranty.**

The Nielsons argue: (1) the matter should be remanded to the district court for a determination of the amount of attorney fees incurred by the Nielsons in bringing their claims; or (2) if this Court affirms the district court's judgment, the case should nonetheless be remanded with instructions for the district court to award the Nielsons the value of the property lost.

In *Flynn v. Allison*, Flynn filed an action to quiet title to a disputed strip of land between his property and the neighboring property. 97 Idaho 618, 549 P.2d 1065 (1976). The neighboring property had recently been sold by Murphy to the Allisons. *Id.* at 619, 549 P.2d at 1066. The district court quieted title in Flynn's favor after concluding that he had perfected title by adverse possession and denied the Allisons' counterclaim for damages resulting from Murphy's misdescription in the deed. *Id.* at 618, 549 P.2d at 1065. On appeal, this Court affirmed the district court's quiet title holding, but reversed the district court's denial of the Allisons' counterclaim. *Id.* at 619, 549 P.2d at 1066. Specifically, this Court held that the Allisons were entitled to relief on their counterclaim because they had been deprived of land

9

that Murphy's warranty deed purported to convey. *Id.* at 622, 549 P.2d at 1069. This Court noted that "[u]nder Idaho law, damages for breach of the warranty contained in a deed, rather than specific performance of the deed covenants, has been established as adequate compensation for the property lost and expenses incurred in defending the title, including attorney fees." *Id.* (citing *Elliott v. Thompson*, 63 Idaho 395, 120 P.2d 1014 (1941)).

A similar situation arose in *Griffel v. Reynolds*, 136 Idaho 397, 34 P.3d 1080 (2001). Reynolds purchased property from Stegelmeier, and after a survey was performed, he placed a fence along what he believed to be the property line. *Id.* at 399, 34 P.3d at 1082. Reynolds' neighbors Harshbarger and Griffel disputed the property line and brought a suit for adverse possession and boundary by agreement and/or acquiescence. *Id.* Reynolds filed a third party complaint and motion for summary judgment against Stegelmeier for breach of the warranty deed, which the district court granted. *Id.* Harshbarger and Griffel abandoned their claim for adverse possession, and the case proceeded to trial on the boundary by agreement and/or acquiescence claim. The district court found that while the neighbors did not know the exact location of the common boundary line, there was a sufficient basis to establish an agreed boundary with certainty, but did not quiet title to the land. *Id.* The district court also awarded Reynolds compensation for a deviation of seven feet in the farming lines based on expert testimony. *Id.* On appeal, this Court affirmed the district court's holding of boundary by acquiescence, but vacated the award of costs to Reynolds stating that "[u]ntil such time as the plaintiffs successfully obtain quiet title in the disputed area that is bounded in part by the newly-established boundary by acquiescence but as yet undefined, we are unable to measure the amount of property that Reynolds has been deprived of and the extent of any liability for said loss that Stegelmeier is responsible for." *Id.* at 402, 34 P.3d at 1085.

In *Elliott v. Thompson*, Elliot applied for title to property he had purchased after it was discovered that the property was inaccurately included in a grant from the State of Oregon to Elliot's predecessor-in-interest. 63 Idaho at 405, 120 P.2d at 1019. Elliot's request was denied, and on appeal this Court analyzed whether Elliott was entitled to recover costs and expenses incurred in attempting to gain title to land that had purportedly been conveyed to him. *Id.* This Court held that "one may recover on such a warranty as contained in the deed in question the expenses connected with litigation *unsuccessfully* attempting to validate the title received, and the cost of extinguishing an adverse title." *Id.* at 407, 120 P.2d at 1020 (emphasis in original).

10

We hold that the district court erred in dismissing the Nielsons' claim for breach of warranty. The district court based its dismissal on the fact that the warranty deed was altered by the oral agreement of the previous owners, thus, a breach of warranty claim was baseless. However, we find that *Flynn* demonstrates that the district court erred. In *Flynn*, this Court affirmed the district court's judgment quieting title in favor of Flynn, the adverse possessor. 97 Idaho 618, 549 P.2d 1065. Thus, the warranty deed conveyed by Murphy was, in a sense, altered by the district court's judgment. Nonetheless, this Court held that the Allisons were entitled to relief for the breach of warranty via compensation for the property lost and attorney fees incurred in defending title. *Id.* Similarly here, although we are affirming the district court's quieting of title in favor of the Talbots, the Nielsons may be entitled to damages for their lost property and their attorney fees below because the warranty deed purported to convey them the property that was later quieted in favor of the Talbots. *Contra Griffel*, 136 Idaho at 402, 34 P.3d at 1085 (This Court did not award Reynolds damages from Stegelmeier for the lost property because the neighbors had not yet quieted the title to land and so it had not been shown that Reynolds suffered a compensable loss.). Such a holding is also supported by this Court's statement in *Elliott*, i.e., the Nielsons may be entitled to damages despite the fact that their action was unsuccessful.

Our holding today is distinguishable from recent cases where were we have held that "[o]nce there is an agreed upon boundary, the parties to the agreement are no longer entitled to the amount of property provided for in their deeds and must absorb the effect of any increase or decrease in the amount of their property as a result of the new boundary." *Stafford v. Weaver*, 136 Idaho 223, 31 P.3d 245 (2001); *Teton Peaks Inv. Co., LLC v. Ohme*, 146 Idaho 394, 195 P.3d 1207 (2008); *Flying Elk Inv., LLC v. Cornwall*, 149 Idaho 9, 232 P.3d 330 (2010). Specifically, these cases are inapposite because they all pertain to disputes concerning the value lost between *neighboring properties* after a new boundary has been established.

Here, the Parkers were the sellers of the altered property and, through a warranty deed, the Parkers provided an erroneous legal description of the land they were purporting to sell. By this holding we reiterate it is imperative that sellers take adequate measures to ensure the accuracy of the legal description contained in a deed before they sell that property to another and make associated warranties. The Parkers allegedly failed to do so. Accordingly, we remand

11

the case to the district court to determine whether the Nielsons can prevail on their claim for breach of warranty against the Parkers.

**C.    The district court did not err by failing to grant the Nielsons' motion to disqualify the Talbots' and Parkers' counsel.**

The Nielsons assert that the district court erred by failing to disqualify the attorney representing the Talbots and the Parkers because the parties were directly adverse to one another.

"The decision to grant or deny a motion to disqualify counsel is within the discretion of the trial court." *Foster v. Traul*, 145 Idaho 24, 32, 175 P.3d 186, 194 (2007) (citing *Weaver    v. Millard,* 120 Idaho 692, 696, 819 P.2d 110, 114 (Ct. App. 1991)). Thus, the three part abuse of discretion test applies, which "requires a three-part inquiry: (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason." *Id.* at 28, 175 P.2d at 190 (citing *McDaniel v. Inland Northwest Renal Care Group–Idaho, LLC*, 144 Idaho 219, 221–22, 159 P.3d 856, 858–59 (2007)). The party asserting the abuse of discretion carries the burden of demonstrating that an abuse of discretion occurred, and a failure to do so is fatal to its argument. *Green River Ranches, LLC v. Silva Land Company, LLC*, 162 Idaho 385, —, 397 P.3d 1144, 1151 (2017).

The Nielsons have failed to demonstrate, or even attempt to demonstrate, that an abuse of discretion occurred under any part of the three-part inquiry applied by this Court. We find this to be fatal to their argument and we affirm the district court's discretionary decision.

**D.    No party is entitled to attorney fees on appeal.**

The Talbots and the Parkers request attorney fees on appeal under Idaho Code section 12-121. Attorney fees can be awarded on appeal under this statute to the prevailing party. *Anderson v. Goodliffe*, 140 Idaho 446, 450, 95 P.3d 64, 68 (2004). Fees are appropriate when the Court determines that the action was "brought, pursued, or defended frivolously, unreasonably, or without foundation." I.C. § 12-121 (as amended by 2017 Idaho Laws Ch. 47 (H.B. 97)).

An award of attorney fees is not appropriate on appeal. The Nielsons prevailed on appeal with regard to their claim against the Parkers. An appeal is not frivolous,   unreasonable

or without foundation if the appellant prevails. *See Thomas v. Madsen*, 142 Idaho 635, 640, 132 P.3d 392, 397 (2006). Although the Nielsons did not prevail on their claim against the Talbots, their appeal was not frivolous, unreasonable or without foundation. As such, no attorney fees are awarded.

## VI. CONCLUSION

We affirm the district court's grant of summary judgment in favor of the Talbots regarding the property line dispute and the motion to disqualify counsel. However, we remand the case so that the district court may enter a proper judgment that sufficiently describes the altered property line. Additionally, we vacate and remand the district court's judgment as to the Nielsons' breach of warranty claim. Costs on appeal to Talbots.

Chief Justice BURDICK, Justice BRODY, Justices *pro tem* HUSKEY and WALTERS, CONCUR.